Argued February 14; affirmed March 5, 1940

COE ET AL. *v.* AMERICAN FRUIT GROWERS, Inc.

(100 P. (2d) 234)

In Banc.

*Hale McCown*, of Portland (Omar C. Spencer, of Portland, on the brief), for appellant.

*Ernest C. Smith*, of Hood River, for respondents.

RAND, C. J. This is an action to recover the balance of an account for fruit sold and delivered to the defendant under an offer in writing made by defend-

ant's manager and its acceptance by the plaintiff, Earl S. Coe. The defendant accepted delivery of the fruit and sold and disposed of the same but, owing to a slump in the market price, failed to pay for a part thereof. At the close of the trial, the court directed a verdict for the plaintiff for the unpaid balance of $4,090.55, and, from a judgment thereon, the defendant has appealed.

The contract thus entered into was as follows:

"American Fruit Growers
Incorporated
Oregon Division
Hood River, Oregon
September 23rd, 1937

Earl S. Coe
Bingen, Washington

Dear Mr. Coe:

The American Fruit Growers, as you know, have a marketing agreement with Mr. Herbert Williams of White Salmon. They also have a chattel mortgage on Mr. Williams' fruit crop which is held in abeyance subject to a 75c a box growing and harvesting agreement that you have with Mr. Williams.

We have understood from the start that Mr. Williams had an agreement with you whereby you were to take care of his crop during the growing season and look after it, harvest and pack it and prepare the fruit for market. Our marketing agreement and chattel mortgage with Mr. Williams were made with that understanding, so that there has been no misconception on our part in regard to your deal or arrangement with Mr. Williams in the growing and harvesting of his crop.

We have never felt at any time during the season that there was any reason for any argument or controversy between you, Mr. Williams and ourselves over the handling and marketing of his fruit. However, in your agreement with Mr. Williams it appears that there is one point open to discussion about the security of

your account. To clear this matter up to every one's satisfaction, we are agreeing to guarantee the payment of 75c a box on all packed fruit on Mr. Williams' 1937 crop of commercial grades and sizes. 216s/ larger.

"This 75c a box will be paid jointly to you and the Mid-Columbia Production Credit Association as the fruit is sold and moved out of storage.

Mr. Williams is perfectly agreeable to this arrangement and we are willing to carry it through for him. Kindly acknowledge acceptance of this agreement so there will be no further misunderstanding or argument about shipping orders on future movement of Mr. William's crop.

We are sending you a copy with a place for acknowledgement signature, which would probably be the easiest way to close the agreement.

Very truly yours,
American Fruit Growers Inc.
Hood River Division
E. R. Pooley,
Manager.

Accepted and acknowledged this 25 day of Sept. 1937.
cc: Herbert Williams          Earl S. Coe
    Mid-Columbia PCA''.

The defendant's principal contention is that this was a contract of guaranty—a mere promise to answer for the debt or default of Williams and, although in writing, is unenforceable for the reason that neither the defendant company nor its manager had authority to guarantee the payment of another person's debt.

■ It appears from the undisputed evidence that Williams, the person referred to in the contract, had other lands on which similar fruit was grown and that he had not only contracted with the defendant that defendant should market this fruit but had also given defendant a chattel mortgage on all said fruit including that grown by Coe. It also appears that Williams

had agreed with Coe that he should be paid 75 cents per box for the fruit grown by him and that this charge should be prior to the lien of defendant's chattel mortgage, and that this fact was known and agreed to by the defendant. It also appears that Coe was insisting that he should receive all the proceeds from the sale of the fruit subject to his lien until all sums due him from Williams, under his contract, had first been paid, and that both Williams and the defendant were desirous that all sums in excess of 75 cents per box received from the sale of Coe's fruit should be applied and credited as received upon the chattel mortgage and not be retained by Coe as contended for by him.

To settle this controversy and to obtain this benefit, the contract between Coe and the defendant was entered into and the benefit which the defendant expected to realize therefrom was a sufficient consideration for the contract. It is also admitted that Coe has performed his part of the contract and that Coe's fruit has been sold and disposed of by the defendant.

■ Although the word "guarantee" was used in the contract, that fact alone does not determine its character. Defendant's promise was not that, if Williams failed to pay Coe, the defendant would do so. That, of course, would have been a guaranty. Defendant's promise was: "we are agreeing to guarantee the payment of 75c a box on all packed fruit  *  *  *  This 75c a box will be paid jointly to you and the Mid-Columbia Production Credit Association as the fruit is sold and moved out of storage. Mr. Williams is perfectly agreeable to this arrangement and we are willing to carry it through for him." This is not the language of a contract of guaranty but is an absolute and unconditional promise to pay those sums upon performance

by Coe of the terms of the contract. In substance, the transaction amounted merely to a contract for the sale of Coe's interest in the fruit upon his release of his lien thereon and the delivery thereof to the defendant. As such, it amounted to an original offer by the defendant to pay the stipulated sums upon Coe's performance of the contract.

■ It is well settled that, where a promise is made in consideration of some pecuniary or business advantage which the promisor expects to obtain and which but for the promise he could not enjoy, the promise is not a guaranty even though performance thereof will result in the payment of a debt owed by a third party to the promisee. In such case, the payment of the debt is merely incidental to the main object and purpose which the parties had in entering into the contract. In *Davis v. Patrick*, 141 U. S. 479, 488, 12 S. Ct. 58, 35 L. Ed. 826, the court said, quoting from the case of *Emerson v. Slater*, 22 How. (U. S.) 28, 43, 16 L. Ed. 360:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability."

In Williston on Contracts, Rev. Ed., vol. 2, section 470, the author says:

"Perhaps as common a test as any that has been suggested for distinguishing promises which fall within the Statute from those which fall without its boundaries is based on the supposed purpose or object of the promisor. Chief Justice Shaw, in a leading Massachusetts decision, (Nelson v. Boynton, 3 Met. (Mass.) 396, 402,

37 Am. Dec. 148), said that 'when the party promising has for his object a benefit which he did not before enjoy accruing immediately to himself', the promise is not within the Statute; but where 'the object of the promise is to obtain the release of the person or property of the debtor, or other forbearance or benefit to him it is within the Statute' ''.

To the same effect, see Restatement of Contracts, section 184, 24 Am. Jur., section 3, p. 874, and 20 Cyc., p. 1397, where the rule is stated as follows:

''* * * The chief characteristic of a guaranty being that it is collateral to some other contract or duty, if it can be seen that the person sought to be held is primarily liable, prior to the breach of the contract or duty by some one else, the conclusion at once follows that the contract in question is not one of guaranty; and, although a contract is in form to answer for the debt or default of another, if its leading purpose is to secure some benefit to the promisor or to promote his interest, it will be regarded as an original undertaking.''

■ It is clear from a reading of this contract, that defendant's promise was absolute and unconditional and was not dependent in any way upon Williams' failure to pay the stipulated amounts, and, as such, it was an original promise—a new and independent contract which bound the defendant to pay the stipulated amounts upon Coe's performance of the contract.

■ The defendant, however, contends that Pooley, its manager, had no authority to enter into the contract for the purchase of fruit unless specially authorized to make the purchase. In this state the law is well settled that the powers of the managing officers of a corporation are coextensive with those of the principal except in relation to matters over which the stockholders alone have control. See *Depot Realty Syndicate v. Enterprise Brewing Co.*, 87 Or. 560, 170 P. 294, 171 P. 223, L. R. A.

1918C, 1001; *Moll v. Roth Co.*, 77 Or. 593, 601, 152 P. 235, and *Calvert v. Idaho Stage Co.*, 25 Or. 412, 414, 36 P. 24. In the Moll case, the court said:

"Since a corporation can act only through its agents, the authority and power of the managing officers of the corporation in the aggregate are coextensive with those of the corporation itself. An officer or agent may act for and bind the corporation within the scope of the authority conferred upon him either expressly or impliedly."

Holding to the same effect, see Clark and Marshall on Private Corporations, vol. 3, sections 707 and 708.

■ It appears from the certificate of the corporation commissioner, plaintiffs' exhibit No. 21, that the defendant corporation is a Delaware corporation and authorized to transact business in Oregon; that its principal office and place of business in Oregon is in Hood River, and it is admitted that Pooley was its manager in charge of its office and business at that place. Its articles show that, among the corporate powers of the corporation, is the power to buy and sell fruit and, since Pooley's powers in respect to the purchase and sale of fruit were coextensive with those of his principal, he was authorized to enter into this contract without any previous authorization upon the part of the defendant company and the contract was, therefore, binding upon the defendant without the showing of any prior authorization on the part of the defendant.

■ Since it was admitted that the defendant had accepted delivery of the Coe fruit and had sold and disposed of the same pursuant to the contract and there being no dispute as to the amount due and payable to the plaintiffs under the contract, it was not error for the court to direct a verdict for that amount in favor of the plaintiffs.

Other matters have been assigned as error. These are based upon the contentions above referred to and, after a careful consideration thereof, are found to be without merit.

The judgment appealed from is, therefore, affirmed.

BEAN and ROSSMAN, JJ., not sitting.