Argued December 6, 1961, reversed January 24, 1962

ROBERTS ET AL *v.* STATE TAX COMMISSION

368 P. 2d 342

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and Donald H. Burnett, Assistant Attorney General, Salem.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were Frank H. Spears and Koerner, Young, McColloch & Dezendorf, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

GOODWIN, J.

The Oregon State Tax Commission appeals from a decree of the circuit court which ordered a refund of income taxes paid. The Commission had assessed the tax upon certain payments made by a corporation to the wife of a deceased employe.

It is conceded that inheritance taxes were paid

pursuant to ORS 118.010 on the fair market value of the contract out of which this dispute arises:

### "EMPLOYMENT CONTRACT

"Roberts Bros. by and through its duly appointed President and pursuant to authority of the Board of Directors in consideration of past, present and future services to be performed by Mr. E. H. Roberts on behalf of the corporation, hereby enters into the following employment contract with the said E. H. Roberts.

"Roberts Bros. hereby continues to employ Mr. E. H. Roberts in the services of the corporation at a salary of $30,000.00 per year, the same to be paid so long as he remains active in the affairs of the corporation, and for a period of two (2) years after his retirement, and that commencing two (2) years after his retirement, he shall receive the sum of $1,000.00 per month for his lifetime and upon his death his widow, Sylvana M. Roberts, shall receive the sum of $1,000.00 per month for her lifetime.

"E. H. Roberts accepts the terms of employment as herein set forth and agrees to continue to devote his best interests to the affairs of the corporation.

"WITNESS our hands and seals this the 4th day of August, 1953.

"* * * * *"

Payments were made to the wife under the contract for each of the tax years 1955, 1956 and 1957. The tax was assessed as upon ordinary income. The wife paid under protest and sued for a refund of all tax in excess of that which would have been payable had she been permitted to establish a basis for the contract under ORS 316.265 (6).

The statute (now ORS 316.266 (6)) then provided:

"If the property was acquired by bequest, devise, descent or inheritance, or by the decedent's estate from the decedent the basis shall be the same

as if the property had been purchased for its fair market value at the date of the death of the decedent * * *."

The case was submitted upon a stipulation, which included the following:

"On April 19, 1955, E. H. ROBERTS died while the aforesaid Employment Contract was in full force and effect. He was survived by his widow, SYLVANA ROBERTS, who is one of the plaintiffs in this suit. Prior to his death the aforesaid Employment Contract could have been modified, amended or revoked at any time and in any manner by the mutual consent and agreement of E. H. ROBERTS and ROBERTS BROS. and could have been terminated by the unilateral breach of such Employment Contract by E. H. ROBERTS * * *."

It is apparent that the payments made under the contract are not excludable as property acquired (in the statutory language) by bequest, devise, or descent. Each form of acquisition has a precise meaning.

Mrs. Roberts asserts, however, that the controverted sums are property acquired by "inheritance" within the meaning of the quoted statute. She says that "inheritance", as used in the statute, was not intended to be limited to its common-law meaning, but rather was intended to include any acquisition of an interest in property on the death of an owner thereof. She contends, in effect, that "acquire" under ORS 316.265 (6) equals "vest".

The question, then, is this: Does the statutory language, "acquired by inheritance", include any and all vesting of rights which are postponed until some one's death, and not otherwise provided for by the statute? If "acquired by inheritance" is construed as some sort of an omnibus clause, or catch-all, to cover any vest-

ing in one person upon the death of another, then the taxpayer ought to prevail.

■ At common law, "inherit" meant to take by descent from an ancestor who died intestate. *In re Buell's Estate,* 167 Or 295, 305, 117 P2d 832, 836 (quoting from *Warren v. Prescott,* 84 Me 483, 24 A 948, 17 LRA 435). The present case clearly does not fit the common-law definition of inheritance. But the taxpayer urges that the common-law definition probably was never contemplated in drafting ORS 316.265 (6) because such a definition would make "inheritance" redundant. ("Inheritance" immediately follows "descent".)

Framed in light of *Bechtel v. State Tax Com.,* 72 Adv Sh 1431, 1434-1435, 228 Or 123, 363 P2d 1102, her contention is that her husband's contract passed to her when he died. Therefore, she asserts that her acquisition of benefits under the contract should be treated as an inheritance. The Commission contends, on the contrary, that Mrs. Roberts had an *inter vivos* interest in the contract during her husband's life, separate and apart from her husband's interest, and that no property in the contract passed upon his death. In effect, the Commission asserts that the husband's rights under the contract died with him and that the wife's pre-existing rights merely became perfected upon his death.

Accepting the issue as presented to the trial court, it is necessary first to decide what kind of an interest the wife acquired.

■ The courts of most of the American states have recognized the right of a donee beneficiary to maintain an action upon a contract made between others. This court has done so in *Erwin v. First Nat'l Bank,* 212

Or 534, 321 P2d 299, where we granted a donee's suit for specific performance of a contract to make a will. Also see Annotation, 81 ALR 1271; Brown, Personal Property 180, § 61 (1936); Restatement, 1 Contracts 151-158, §§ 133-135. We hold that the wife's interest in the contract was that of a donee beneficiary.

■ The next inquiry concerns the time when she acquired her rights. Ordinarily the rights of a donee under a contract of this character come into being when the contract is executed. The vesting of such rights may be postponed, but the beneficiary obtains an immediate, though defeasible, interest which the law will recognize and protect to the extent required by the circumstances of the case. *Rhodes v. Rhodes,* 266 SW2d 790, 44 ALR2d 1266 (Ky. 1953); *Ireland v. Lester,* 298 Mich 154, 298 NW 488 (1941); *Silverthorne v. Mayo,* 238 NC 274, 77 SE2d 678 (1953); Simpson, Contracts (1954) 321, § 85; 2 Williston, Contracts (3d ed) 842, § 357.

■ Describing a common type of donee, Williston says a life-insurance beneficiary has a "defeasible vested interest". Williston, supra at 904, § 369. Whether or not it is ever accurate to say an interest can be vested and defeasible at the same time, our own decisions indicate that rights like those of the wife in the executory contract between her husband and her husband's employer, while created *inter vivos,* were not vested rights until after the death of the husband. "A vested right 'is an immediate, fixed right of present or future enjoyment; a right perfect in itself, and which is not dependent upon a contignecy [sic]': 40 Cyc. 199, 12 C.J. 955, [Constitutional Law] § 485 [16 CJS 1173, Constitutional Law § 215] * * *." *McCleery v. Woodmen of the World,* 136 Or 407, 419, 297 P 345,

299 P 1004; accord, *Williamson v. Denison and Groves,* 185 Or 249, 255, 202 P2d 477. It does not follow, however, as the wife contends, that because her interest was not "vested" she therefore acquired her rights (a species of property) by the equivalent of inheritance.

The contract required *A* to pay money to *B*; and upon *B's* death if the contract meanwhile had not been rendered inoperative, to pay money to *B's* widow. In a creditor-beneficiary case, this court has held that the creation of such an interest in a surviving spouse was complete at the time of the execution of the contract. Survivorship was merely the event that caused the performance to fall due a different person. See *Leibee et al v. Leibee et al,* 220 Or 256, 349 P2d 486. We see no reason why a donee's interest should be treated differently in this case.

In the case at bar, the widow's rights, created during the husband's lifetime, became absolute upon his death because death put the contract beyond the husband's power to rescind or breach it. Such a state of affairs does not constitute a passing of property upon death, but rather the vesting of a contingency. The situation is analogous to that of a contingent remainderman whose estate can be defeated by a variety of circumstances over which he has no control, e.g., the birth of an heir to the holder of the limited fee, etc. A contingent remainder may become a vested remainder when a named person dies because it is no longer within the power of such a person to defeat the estate. The perfection of a contingent right is not a passing of property upon death, but rather the vesting of a previously conveyed right. The only conveyance necessary is accomplished *inter vivos.*

■ Turning to the taxing statutes themselves, it ap-

pears to be the policy of the legislature to tax by one scheme the passing of property upon death (ORS 118.010), and to tax by a different scheme income from a wide variety of soruces (ORS 316.105). Whether or not such taxes, when properly assessed, are mutually exclusive (see ORS 316.258, adopted in 1961), the two taxes were not mutually exclusive in the years 1955, 1956, and 1957. *Bechtel v. State Tax Com.,* supra.

■ Since the taxes were not mutually exclusive, it becomes necessary to ascertain, if possible, what the legislature intended to tax. If the question had been put to the legislature, would it have considered the payments received by the widow in the case at bar to be income, or would it have considered such payments to be in the nature of a bequest?

When viewed in the context of other tax legislation, it is reasonable to conclude that the legislature did not intend ORS 316.265 (6) to exclude from income taxation the proceeds of the contract now before the court. The husband paid no monetary consideration for the contract, but promised to perform services. As a practical matter, the benefits of the contract were deferred income to the husband and later to his designee when he predeceased her. Such a scheme more nearly falls within the intended reach of an income tax than that of a death tax.

Our recent holding in *Bechtel v. State Tax Com.,* supra, supports the Commission and is decisive of the question in this case. The property in the hands of the taxpayer was not "acquired by inheritance". It was given to her during her husband's lifetime, subject to being defeated by the contingencies above described, and subject to vesting upon the satisfaction of the contractual conditions.

It has not been argued that the contract was an annuity under ORS 316.110, so we do not decide questions which might be raised under that section of the revised statutes.

We note, in passing, that contracts of the kind presently before this court have become sufficiently common to attract congressional attention in the field of federal taxation. See Int Rev Code of 1954, § 102, and 1 Mertens, Law of Federal Income Taxation 22, § 6.07. Even prior to the present federal legislation on such contracts, however, we find no cases holding such benefits to be "inherited". On the contrary, the federal courts treated such contractual payments as income. See *Flarsheim v. U. S.,* 156 F2d 105 (8th Cir 1946). Voluntary payments, on the other hand, were, until recently, considered tax-free gifts. See Flechner, *Tax Consequences of Payments to Widows,* 29 Taxes 811.

Under the statutes of this state as they existed at the times in question, the tax demanded by the Commission in this case was payable unless the property was inherited within the meaning of ORS 315.265 (6), now ORS 316.266 (6). Since we hold that the taxpayer did not acquire her contract by inheritance, we have no choice but to reverse the decree of the trial court and reinstate the orders of the Commission.

Reversed.