## BLACK *v.* STATE TAX COMMISSION

Borden F. Beck, Jr., Portland, argued the cause for plaintiff. Borden F. Beck, Jr., Portland, and Black & Apicella filed briefs for plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause and filed a brief for defendant.

Decision for plaintiff rendered June 25, 1964.

Peter M. Gunnar, Judge.

This is a suit to set aside State Tax Commission Opinion and Order No. I-63-9 which denied plaintiff's claim for refund of personal income taxes for the fiscal year ending May 31, 1962.

Since December 3, 1956, plaintiff has been the executor of the estate of Otto H. Hermann, deceased. By written instrument, dated April 16, 1956 (referred to hereinafter as the April 16th instrument and appended hereto), Otto H. Hermann and three other individuals jointly and severally agreed with the Canadian Bank of Commerce securing the repayment of a $75,000 loan by the bank to the Canamex Mining Corporation Ltd. upon Canamex's promissory note dated April 16th, 1956. Canamex's indebtedness to the Canadian Bank of Commerce arose contemporaneously with the execution of the April 16th instrument.

On November 10, 1956, Otto H. Hermann died. At

that time Canamex had not paid its $75,000 indebtedness and the bank had made no demand for payment.

On September 7, 1961, unable to obtain payment from Canamex, the Canadian Bank of Commerce made its first demand on plaintiff under the April 16th instrument for payment of the $75,000 indebtedness.

Because the estate was potentially liable to the bank for payment of the entire indebtedness, plaintiff negotiated a settlement agreement, dated as of October 6, 1961. Under this agreement, plaintiff paid the bank, on January 3, 1962, the sum of $26,250 Canadian (i.e., $25,200 US) and was released by the bank from all further liability under the April 16th agreement. The bank assigned to plaintiff all its right to that portion of the $75,000 which plaintiff paid on behalf of Canamex and Canamex acknowledged its indebtedness to the estate. As part of the settlement, the three individuals who had signed the agreement with Otto H. Hermann released plaintiff of all claims that they might have against the estate.

After filing the estate's original fiduciary income tax return for its fiscal 1962, plaintiff filed an amended state return and a claim for refund. In the claim for refund the plaintiff alleged that the estate was entitled to a nonbusiness bad debt deduction in the amount of $25,200 (US) paid by it for Canamex. Defendant's order denied plaintiff's claim for refund and the plaintiff sues in this court to set aside defendant's order.

This factual situation raises three issues. The first of these is whether the April 16th instrument is a guaranty or indemnity agreement?

■ American and Canadian law distinguish a contract of guaranty from a contract of idemnity in the

same way. Compare *Westminster Trust Company v. Brymner & Rand*, 3 Western Weekly Reports 488, 54 Dominion Law Reports 244, 28 British Columbia Reports 504 (British Columbia Court of Appeals 1920) with *Coe v. Amer. Fruit Growers*, 164 Or 90, 100 P2d 234 (1940) and *Howell v. Commissioner*, 69 F2d 447 (8th Cir 1934), cert. denied 292 US 654, 54 S Ct 864, 78 L ed 1503 (1934). The use of the word "guarantee" in an instrument does not alone determine the instrument's character. *Coe v. Amer. Fruit Growers, supra.* However, this word helps to determine the instrument's effect when it is used in its normal sense, as it was here, and the parties treat it as having its normal meaning.

■ The text writers have defined an indemnity contract as:

"* * * an engagement to make good or save another from a loss upon some obligation which he has or is about to incur to a third party and is not a promise made to one *to whom* another is answerable. In other words, the promise is to the debtor and not to the creditor." Stearns, *Law of Suretyship*, p 37 (4th ed 1934, Feinsinger).

An indemnity contract is an original undertaking independent of any collateral contract. *Howell v. Commissioner, supra* at 450. The April 16th instrument is so tied in with the bank's loan to Canamex as to preclude its denomination as an indemnity agreement. Plaintiff's promise runs to the bank as creditor of Canamex and not in its capacity as debtor to its stockholders, cf. *Howell v. Commissioner, supra*. The decedent's promise is made to someone, the bank, to whom another, Canamex, was answerable. Therefore it cannot be a promise of indemnity.

Another author distinguishes these relationships as follows:

"Like contracts of suretyship and guaranty, the contract of indemnity had as its purpose security of the promisee against loss. As it is generally understood, the promisee owes, or is about to assume, an obligation, and the promisor agrees to save him harmless from loss as a result of his assumption of that obligation. In contracts of suretyship and guaranty, a third person owes or is about to assume a duty to the promisee, and the promise is made to protect the promisee in case the third person fails to perform. * * * [T]he guarantor's [promise] is usually expressly conditioned on the principal's nonperformance and the consequent duty [is] secondary or collateral. The indemnitor's promise is not conditioned upon another's nonperformance of duty. For this reason, it is said to give rise to a primary obligation." Arant, *Suretyship*, p 26 (1931).

See also *Westminster Trust Company v. Brymner & Rand, supra.*

■ A guaranty of a note is a covenant to pay it, breached by failure of the note's maker to do so; while an indemnitor's covenant is merely to make good any loss from nonpayment. *Eckhart v. Heier*, 37 SD 382, 158 NW 403 (1916). That the April 16th instrument is a covenant to pay in full, not just pay any loss that may arise, is evident from its terms. Stating the distinction in reverse "Without a principal debt for which the guarantor is answerable, there can be no guaranty * * *." *Howell v. Commissioner, supra* at 450. The Canamex debt to the bank is a principal debt in this case, and therefore, a guaranty can exist.

An application of these rules of law in this case irresistibly leads to the determination that the April

16th instrument was a contract of guaranty and not one of indemnity. The parties' treatment of the instrument as a guaranty further supports this conclusion. See *Westminster Trust Company v. Brymner & Rand, supra; Markham & Callow v. Inter. Woodworkers,* 170 Or 517, 135 P2d 727 (1943).

The second issue is whether plaintiff is entitled to a nonbusiness bad debt deduction because Canamex's debt became worthless and was plaintiff's property through subrogation and/or assignment when plaintiff satisfied its obligation under the April 16th instrument.

■ There is no question concerning the existence of a bad debt during the plaintiff's fiscal year in question. Defendant concedes that, if the court holds that the April 16th instrument was a guaranty, then plaintiff is entitled to a bad debt deduction pursuant to the reasoning in *Putnam v. Commissioner,* 352 US 82, 77 S Ct 175, 1 L ed2d 144 (1956). This court holds that the April 16th instrument was a guaranty and therefore plaintiff is entitled to a bad debt deduction.

But, even if the April 16th instrument were an indemnity contract, the bank's assignment of its rights in the Canamex debt to plaintiff, when plaintiff indemnified the bank for a portion of the Canamex loan, would distinguish this case from those in which indemnitors were not allowed a bad debt deduction. The fact that the plaintiff had Canamex's debt assigned to him upon his performance of the April 16th instrument as a contract of indemnity would bring this case within the reasoning of *Putnam,* and entitle plaintiff to a bad debt deduction. cf. *Howell v. Commissioner, supra* at 451 with *Putnam, supra.*

The third issue is whether plaintiff should be

denied this deduction on the ground of alleged inconsistent theory.

When Otto H. Hermann died, he had not yet been called upon by the bank to fulfill his obligation under the April 16th instrument. For Oregon inheritance tax purposes, the State Treasurer allowed plaintiff to deduct its contingent liability under the April 16th instrument as one existing at Otto H. Hermann's death. Defendant contends that plaintiff was not entitled to a deduction under the Oregon inheritance tax law, and exhorts the court to so construe ORS 118.070. Because plaintiff did obtain an inheritance tax deduction, defendant contends that plaintiff's inheritance tax theory is inconsistent with his theory under which he here claims a nonbusiness bad debt deduction.

■ First, it should be noted that the only question properly before this court is the propriety of plaintiff's nonbusiness bad debt deduction for income tax purposes. Neither defendant nor this court has either the right or the duty to enforce the Oregon inheritance tax laws. ORS 118.500. There is no proof that plaintiff misrepresented the facts to the State Treasurer's office or that his theories necessarily conflict.

Defendant cites one case which is inapposite here because in it the alleged guarantor was really the primary obligor. *Lang v. Commissioner*, 32 BTA 522 (1935). Such is not the case here.

■■■ The Oregon inheritance and income taxes are two distinct systems of taxation. They differ in kind and are wholly disparate in their incidence. The income tax is imposed on the earning of income within a certain period, while the inheritance tax is imposed on the transmittal of an estate at death. *Roberts v. State Tax Commission*, 229 Or 609, 615, 616, 368 P2d

342 (1962). An income tax deduction is determined by the statute imposing that tax. The fact than an item is deductible as a contingent liability under an inheritance tax section and the same item is deductible under an income tax section when it becomes certain and is paid should not militate against its deductibility for either tax. *Kleberg v. Commissioner*, 31 BTA 95 (1934); *Adams v. Commissioner*, 110 F2d 578 (8th Cir 1940). Similarly, the taxability of an item for inheritance tax purposes should not militate against its taxability for income tax purposes, if both tax statutes tax it. *Roberts v. State Tax Commission, supra.*

Therefore, because the April 16th agreement is a guaranty and became a nonbusiness bad debt upon plaintiff's performance of it and because there is no inconsistency in allowing such a deduction, plaintiff's refund claim will be allowed. Plaintiff shall prepare a decree overruling the opinion and order of the State Tax Commission and granting plaintiff's claimed refund, together with its costs and disbursements, under Rule 38.

To

THE CANADIAN BANK OF COMMERCE

*FOR VALUABLE CONSIDERATION,* the undersigned and each of them (if more than one) hereby jointly and severally guarantee/s payment to THE CANADIAN BANK OF COMMERCE (forthwith after demand therefor as hereinafter provided) of the liabilities which CANAMEX MINING CORPORATION LTD. (herein referred to as the "customer") has incurred or is under or may incur or be under to the Bank, whether arising from dealings between the Bank and the customer or from any other dealings by which the customer may

become in any manner whatever liable to the Bank; *the liability of the undersigned hereunder being limited to the sum of* <u>*SEVENTY-FIVE THOU-SAND (75,000.00)*</u> *dollars with interest from the date of demand for payment.*

AND THE UNDERSIGNED AND, IF MORE THAN ONE, EACH OF THEM, AGREE/S (1) That the Bank may grant extensions, take and give up securities, accept compositions, grant releases and discharges, and otherwise deal with the customer and with other parties and securities as the Bank may see fit, and may apply all moneys received from the customer or others, or from securities, upon such part of the customer's liability as it may think best, without prejudice to or in any way limiting or lessening the liability of the undersigned under this guarantee.

(2) That this guarantee shall apply to and secure any ultimate balance due to the Bank, but the Bank shall not be bound to exhaust its recourse against the customer or other parties or the securities it may hold before being entitled to payment from the undersigned of the amount hereby guaranteed.

(3) That any loss of or in respect of any securities received by the Bank from the customer or any other person, whether occasioned through the fault of the Bank or otherwise, shall not discharge *pro tanto* or limit or lessen the liability of the undersigned for the amount hereby guaranteed.

(4) That this shall be a continuing guarantee, and shall cover all the liabilities which the customer may incur or be under to the Bank until the undersigned, or the executors and administrators of the undersigned, shall have given the Bank notice in writing to make no further advances on the security of this guarantee.

(5) That this guarantee shall be good notwithstanding any change or changes in the name of the customer, or (if the customer be a partnership)

any change or changes in the membership of the customer's firm by death or by the retirement of one or more of the partners, or by the introduction of one or more other partners.

(6) That any debts or claims against the customer now held or which may during the continuance of this guarantee be held by the undersigned or, if more than one, any of them are and shall be held by the undersigned for the further security of the Bank, and as between the undersigned and the Bank are hereby postponed to the debts and claims against the customer now held or which during such continuance may be held by the Bank, and any such debts and claims of the undersigned or, if more than one, any of them shall be held as trustee for the Bank and shall be collected, enforced or proved subject to and for the purposes of this agreement and any moneys received by the undersigned or any of them in respect thereof shall be paid over to the Bank on account of its said debts and claims; and no such debt or claim of the undersigned or, if more than one, any of them, against the customer shall be released or withdrawn by the undersigned or, if more than one, any of them, during the continuance of this guarantee, unless the Bank's written consent to such release or withdrawal is first obtained and the undersigned shall not permit the prescription of any such debt or claim by any statute of limitations or assign any such debt or claim to any person other than the Bank or ask for or obtain any negotiable paper for or other evidence of any such debt or claim except for the purpose of delivering the same to the Bank; and the Bank may at any time give notice to the customer requiring the customer to pay to the Bank all or any of such debts or claims of the undersigned, or if more than one, any of them, against the customer and in such event such debts and claims are hereby assigned and transferred to the Bank; and in the event of

the liquidation, winding up or bankruptcy of the customer (whether voluntary or compulsory) or in the event that the customer shall make an authorized assignment under the Bankruptcy Act or a bulk sale of any of the customer's assets within the provisions of any Bulk Sales Act, or any composition with creditors or scheme of arrangement, any and all dividends or other moneys which may be due or payable to the undersigned or, if more than one, any of them, in respect of the debts or claims of the undersigned or, if more than one, any of them, against the customer are hereby assigned and transferred to and shall be due and be paid to the Bank, and for such payment to the Bank this shall be a sufficient warrant and authority to any person making the same; and the undersigned and, if more than one, each of them shall at any time and from time to time, at the request of and as required by the Bank, make, execute and deliver all statements of claims, proofs of claim, assignements and other documents and do all matters and things which may be necessary or advisable for the protection of the rights of the Bank under and by virtue of this agreement.

(7) That should the Bank receive from the undersigned or, if more than one, any of them a payment or payments in full or on account of the liability under this guarantee, the undersigned and, if more than one, each of them shall not be entitled to claim repayment against the customer or the customer's estate until the Bank has received payment in full; and in case of liquidation, winding up or bankruptcy of the customer (whether voluntary or compulsory) or in the event that the customer shall make an authorized assignement under the Bankruptcy Act, or a bulk sale of any of the customer's assets within the provisions of any Bulk Sales Act or any composition with creditors or scheme of arrangement, the Bank shall have the right to rank for its full claim and receive all dividends or other

payments in respect thereof until its claim has been paid in full and the undersigned and, if more than one, each of them shall continue liable up to the amount guaranteed, less any payments made by the undersigned, for any balance which may be owing to the Bank by the customer; and in the event of the valuation by the Bank of any of its securities and/or the retention thereof by the Bank, such valuation and/or retention shall not, as between the Bank and the undersigned, be considered as a purchase of such securities, or as payment or satisfaction or reduction of the customer's liabilities to the Bank, or any part thereof.

(8) That the undersigned shall make payment to the Bank of the amount of the liability of the undersigned hereunder forthwith after demand therefor is made in writing and such demand shall be deemed to have been effectually made when an envelope containing it, addressed to the undersigned at the last address known to the Bank, of the undersigned or, if more than one, each of them, is deposited, postage prepaid and registered, in the Post Office.

*THE GUARANTEE AND AGREEMENT* on the part of the undersigned herein contained shall extend to and enure to the benefit of the successors and assigns of the Bank and shall be binding upon the undersigned and, if more than one, each of them and their and each of their heirs, administrators and executors.

*THIS GUARANTEE* is in addition and supplemental to all other guarantees held or which may hereafter be held by the Bank.

*GIVEN UNDER SEAL* at VANCOUVER, B.C. this 16th day of APRIL A.D. 1956.