**UNITED STATES of America**

v.

**IVY HALL APARTMENTS, INC.,**

and

**Secretary of Revenue of Commonwealth of Pennsylvania, Respondents.**

**Civ. A. No. 25723.**

United States District Court
E. D. Pennsylvania.
Sept. 25. 1961.

Walter E. Alessandroni, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Paul Brandeis, Philadelphia, Pa., for Ivy Hall Apts., Inc., and Leon Sidell, claimant.

KRAFT, District Judge.

Plaintiff, acting for the Federal Housing Commissioner, instituted this action to foreclose a real estate mortgage and an accompanying chattel mortgage created by Ivy Hall Apartments, Inc., on property situate in Philadelphia.

On December 22, 1958, pursuant to an agreement contained in the mortgage, we appointed receivers to take charge and possession of the mortgaged premises, to manage and operate the same and to collect the rents and income therefrom, under the orders and supervision of the Court, during the pendency of the action.

In the course of the foreclosure proceedings, Leon Sidell, President and sole stockholder of the corporate mortgagor, claimed ownership of various articles of furniture located upon the mortgaged premises which were not described in the chattel mortgage. Counsel for all parties thereafter stipulated that the furniture claimed by Sidell should be sold at public sale free and clear of all claims and liens together with the mortgaged premises and chattels. Sidell also claimed to be entitled to reimbursement for advances allegedly made by him to the corporation before the foreclosure proceeding in the aggregate sum of $16,785.73.

The mortgaged real estate and chattels and the furniture were subsequently sold at public sale to the only bidder, the Federal Housing Administration, for a sum far below the amount of the debt, and we entered an order confirming the sale.

On September 30, 1960, in accordance with a stipulation of counsel, we ordered, inter alia, that Sidell's claims be relegated to the funds in the hands of the receivers.

The receivers duly filed their account, and, on December 19, 1960, we ordered that the sum of $60,500 be paid to the Clerk of this Court, to be held by the Clerk in the registry of the Court pending disposition of contested claims against the fund.

The only claims against the fund now before us are Sidell's claims (1) for reimbursement for advances to the corporation in the amount of $16,785.73, (2) for the value of the disputed furniture and (3) for rental for the same furniture during the period of receivership and for an additional period prior thereto. Counsel have expressly stipulated, both formally and at the hearings, that this Court has jurisdiction in this proceeding to adjudicate the issues in controversy.

Sidell's claim for reimbursement for advances allegedly made by him to the corporation prior to the foreclosure proceeding requires little discussion. The claim is apparently pressed because of the difficulty experienced by his counsel in perceiving the essential difference between this proceeding and one in bankruptcy. At best, Sidell is nothing more

than an unsecured, general creditor of the corporate mortgagor. This proceeding is one in which the corporate mortgagee, conformably to the terms of the mortgage, took possession as mortgagee, through receivers appointed by the Court, during the foreclosure proceeding. Sidell had no lien against the mortgaged premises and, even had his claim been reduced to judgment, it would have been junior to the mortgage lien and discharged by the sale. As an unsecured, general creditor, his position was weaker still. This fund which accrued from rentals collected by the mortgagee in possession was insufficient to pay the costs of operation and the interest and principal installments in default and so left nothing available for the corporation. Sidell's claim for reimbursement in the sum of $16,785.73 will therefore be disallowed.

■ Sidell made a half-hearted attempt to show that counsel had reached an agreement on the validity and the amount of his claims for the furniture and the rental thereof. The evidence is conclusive that no agreement was consummated. There were meetings in the office of Government counsel in an attept to reach a settlement. The Government's counsel made certain recommendations to the Federal Housing Administration. However, as counsel testified, "The client rejected vigorously my recommendation."

■ Sidell's testimony with respect to his ownership of the furniture was confused, contradictory and wholly dissuasive, and was altogether insufficient to establish to our satisfaction the fact of ownership. Moreover, he failed to offer a scintilla of evidence bearing either on the value of the furniture or its fair rental value for the periods claimed.

Sidell testified that on June 14, 1957, he purchased the stock of defendant corporation (then Flamingo Apartments, Inc.) from the HRS Realty Corporation, which was "owned" exclusively by one Hause. He stated that he also "bought the furniture in 48 units from Mr. Hause." He said that he paid Hause $18,700 for the furniture, and that Hause still owed $6,000 on the original purchase price thereof, which Hause agreed to pay off by July 1959. Sidell testified that he assigned mortgages to Hause in payment of the stock and the furniture.

Not only did Sidell fail to produce any bills of sale or other written evidence of title to any of the furniture, but it appeared from his own documentary evidence that Hause had no title to transfer. Sidell offered in evidence a conditional sales contract, dated December 3, 1955, covering the sale of furniture for the cash selling price (exclusive of finance charges) of $13,407. The buyer named therein was "Flamingo Apts., Inc." Sidell explained that the contract was "for the furniture most recently purchased by Mr. Hause and covered by what he was selling me." Asked if the contract covered all or a portion of the furniture he purchased from Hause, Sidell testified: "There were other things that were in the building which were not brand-new, which he indicated he had brought from an Ivy Hall Apartment building which he owned I think in Camden or across the river somewhere, and some of those things which made up the then total of the 48 units were almost new or fairly new in addition to this."

Sidell testified that, in addition, he purchased "two groups" of new furniture which were placed in the premises. He said that he paid for the furniture, and thus described the method of payment: "The checks were drawn on the Ivy Hall Apartments account out of rent, paid for and then in turn charged to the amount that was due me from the moneys which I had been advancing ever since the day that I bought this."

Sidell offered in evidence an informal "Memorandum of Agreement," dated June 1, 1957, wherein Sidell purported to "rent" furniture to Flamingo Apartments, Inc., "for monthly rental to be determined as follows: All sums of money charged to individual tenants for use of said furniture shall be totaled and paid over to Sidell or deposited at his direction." The instrument does not list

or otherwise specifically identify the furniture involved.

Under cross-examination, Sidell testified as follows:

"Q. You say you did buy furniture after you assumed stock ownership in the corporation; is that correct? A. Yes, sir.

"Q. Do you know how much? A. About $2500 once, about $1200 another time.

\* \* \* \* \* \*

"Q. You have nothing to show that any furniture bought during your ownership in the stock was actually bought by you personally, do you? A. Well, the only records that show this is that the exact amount of money that may have been paid by Ivy Hall Apartments bank account was then charged immediately in that same monthly statement submitted to the F.H.A. as a credit on the payment of my outstanding balance.

"Q. You have nothing with you? A. You have all the papers.

"By the Court:

"Q. Do I understand that the furniture you say you bought was paid for by checks on the account of Ivy Hall Apartments, Inc.? A. Yes, sir.

"Q. Were any documents in the form of bills of sale, bailment leases, or conditional sales agreements issued by whomever furniture was purchased from? A. No, sir. These were bought on open account."

This is the sum and substance of the testimony respecting Sidell's claim of ownership of the furniture. There were no bills of sale, receipts, or evidence of title of any kind. The monthly statements submitted to the F.H.A. that might have shed some light on the expenditures for furniture were not produced. The books of the corporation were not produced. No one even knew where they were. Sidell did not even produce an inventory of the furniture for which he seeks to be paid some $15,000, exclusive of his claim for rent. He made no effort to produce any records of or testimony by any furniture supplier to show sales or delivery of any furniture to him.

Sidell's meager evidence fails utterly to support his various claims, and they must be dismissed in their entirety.

 Even if the evidence had been sufficient to sustain Sidell's claim of ownership, we would nevertheless feel constrained to dismiss his claim. The mortgage included in its terms, inter alia, not only the realty but also the furniture on the premises, and *thereafter* brought upon the premises. The pledge was good and enforceable between the mortgagor and mortgagee. Klaus v. Majestic Apartment House Co., 250 Pa. 194, 222, 95 A. 451. Sidell was the president and sole stockholder of the corporate mortgagor. He personally controlled and directed all its business and handled all its affairs. To all intents and purposes, he *was* the corporation. We think that, for present purposes, justice and public policy demand that the corporate fiction be disregarded and that Sidell and the corporation be considered as identical, in accordance with the familiar rule as expressed in Tucker v̇. Binenstock, 1933, 310 Pa. 254, 263, 165 A. 247, 250:

"The fiction of a corporation as an entity distinct from the aggregate of individuals comprising it was designed to serve convenience and justice. There is consequently an exception recognized wherever the rule is known, namely, that the fiction will be disregarded and the individuals and corporation considered as identical whenever justice or public policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless."

The claims of Sidell to ownership of the furniture, for the value thereof and the rental value thereof will be disallowed.