**UNITED STATES of America**
v.
**IVY HALL APARTMENTS, INC.**
and
**Leon Sidell, Claimant, Appellant.**
**No. 13820.**

United States Court of Appeals Third Circuit.

Argued Oct. 1, 1962.

Filed Nov. 19, 1962.

**6**

Paul Brandeis, Philadelphia, Pa., for appellant.

Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before STALEY and FORMAN, Circuit Judges, and LANE, District Judge.

FORMAN, Circuit Judge.

On June 13, 1957 appellant, Leon Sidell, purchased the stock of Flamingo Apartments, Inc.[1] (Flamingo) from H. S. R. Realty Corporation, Inc. (H. S. R.). At the time of said sale the sole stockholder appears to have been the late Nelson Hause.[2] The main asset of Flamingo was

[1]. On July 22, 1957 the name of Flamingo Apartments, Inc. was changed to Ivy Hall Apartments, Inc.

[2]. It appears from the record that a Dr. Daniel Gevinson was the owner of the stock of Flamingo in May 1955 when he sold it "[t]o Mr. Nelson Hause and several associates, Mr. Sherman and a Mr. Rappaport . . ." It further appears that on December 31, 1955 the stock of Flamingo was in the H. S. R. Realty Corporation, Inc. and that Mr. Nelson Hause and Mr. Rappaport held the stock of the latter. Apparently Mr. Hause

a fifteen story apartment house in Philadelphia, encumbered by a mortgage to secure a bond for $2,533,000 given to the Irving Trust Company in 1950 which had been reduced in principal but little. The mortgage was insured by the Federal Housing Administration. Upon default in principal and interest the Federal Housing Administration was called upon to take over the mortgage.

On December 22, 1958, the United States, on behalf of the Federal Housing Commissioner, filed a complaint for a judgment on the bond, and for the foreclosure of the mortgage, in the United States District Court for the Eastern District of Pennsylvania. That court appointed forthwith receivers, pursuant to the terms of the mortgage, to take charge of the property and collect the rents for the benefit of the mortgagee pending the litigation. On August 5, 1959 default resulted in judgment on the bond for $2,489,508.79 and on January 29, 1960 an order was entered for a judicial public sale of the mortgaged property on March 1, 1960.

Meanwhile Mr. Sidell had asserted three claims to the receivers as follows: (1) That certain furniture contained in 48 of the 300 apartments constituted his personal property and was not covered by the mortgage; (2) that rental for such furniture was due him from October 1, 1957 through September of 1960; and (3) that he should be reimbursed for cash advances he had made to Ivy Hall Apartments, Inc.[3] (Ivy Hall) prior to the appointment of the receivers. Negotiations for the settlement of the claims were in progress with the United States Attorney for the Eastern District of Pennsylvania, as counsel for the Federal Housing Administration, as the time approached for the public sale. It was deemed by all the parties in interest that it would be of advantage to sell the items of furniture along with the real estate

with the understanding that Mr. Sidell's claims, if sustained, would attach to the funds in the hands of the receivers resulting from their rent collections. It was so stipulated and the property, real and personal, was exposed for sale. The only bidder was the Federal Housing Commissioner and the price was in excess of $500,000 less than the principal and interest due under the mortgage.

The receivers petitioned the District Court for leave to pay, among others, Mr. Sidell's claim for cash advances made by him to Ivy Hall prior to the receivership

| | |
|---|---|
| of | $16,785.73. |
| They also proposed to pay him for the value of the furniture claimed by him | 15,225.00 |
| and for furniture rental from October 1, 1957 to December 21, 1958 | 9,358.98 |
| and for furniture rental from December 22, 1958, the date of their appointment, to September 30, 1960, the date of their discharge | 11,174.67, |
| or a total of | $52,544.38. |

The United States Attorney thereupon filed objections to the claims of Mr. Sidell. The issues raised by the objections were heard by the District Court without a jury. It entered an order disallowing all of Mr. Sidell's claims for reasons stated in an opinion reported in United States v. Ivy Hall Apartments, Inc., D.C., 197 F.Supp. 678 (1961). This appeal is taken from that order.

Mr. Sidell contended that the venture was ill starred from the beginning; that prior owners of the apartment house had been unable to meet payments of mortgage principal and interest; and that the corporate career of Ivy Hall was beset by the same vicissitudes. He testified that in the eighteen months that the property was in its hands it was

later dealt with the stock of Flamingo as if he were the sole stockholder of H. S. R., but when that company acquired Flamingo's stock and what became of

the interest of Mr. Rappaport in H. S. R. are details which the record does not supply.

3. No. 1, supra.

necessary for him to advance funds during each month to meet current obligations of the corporation. However, neither this nor any other reason he advanced gave him a status other than that of an unsecured general creditor of Ivy Hall. See United States v. Pine Hill Apartments, 261 F.2d 667 (5 Cir., 1958).

As aptly put by the District Judge:

"* * * This proceeding is one in which the corporate mortgagee, conformably to the terms of the mortgage, took possession as mortgagee, through receivers appointed by the Court, during the foreclosure proceeding. Sidell had no lien against the mortgaged premises * * *. This fund which accrued from rentals collected by the mortgagee in possession was insufficient to pay the costs of operation and the interest and principal installments in default and so left nothing available for the corporation. Sidell's claim for reimbursement in the sum of $16,785.73 will therefore be disallowed." United States v. Ivy Hall Apartments, Inc., supra, 197 F.Supp. at 680.

The same ruling is justified against the claim for rental of furniture up to the time of the receivership because, at best, that too, could give Mr. Sidell only the status of an unsecured general creditor of the corporation which apparently was without funds to meet such indebtedness at the time the receivers took possession of the mortgage.

This leaves for consideration Mr. Sidell's claims for the value of the furniture and for its rental during the tenure of the receivers.

Mr. Sidell sought to support his claim for the value of the furniture by his testimony that at the time he bought the stock of Flamingo from H. S. R. for $60,000 he arranged to purchase the furniture from Mr. Hause, its alleged owner, for $18,700. This he says he satisfied by assigning to Mr. Hause eighteen mortgages having a total value of $75,867.49,

as shown in a copy of the assignment, dated June 14, 1957. In it neither shares of stock of Flamingo nor furniture owned by Mr. Hause are identified as consideration therefor. The only consideration mentioned is nominal "good and valuable". The copy of the assignment falls far short of proof that it was for furniture of Mr. Hause.

He also submitted a "Memorandum of Agreement" under the same date, June 14, 1957, between himself and Flamingo whereby Flamingo rented furniture from him "located in various apartments of the premises of Flamingo Apartments" for a monthly rental to be determined by the sums charged tenants for the use of the furniture which was to be paid to Mr. Sidell or deposited at his direction. No further identification of the amount or value of the furniture is given and no listing thereof is annexed to this document.

As proof of the purchase of some of the furniture from Mr. Hause he offered a conditional contract of sale made by Harry C. Steigman Equipment Co., Inc., New York, dated December 3, 1955, to Flamingo in the sum of $13,407 for furniture and finance charges of $1,792.05 upon which it was noted that a down payment of cash in the sum of $1,470 had been received from Flamingo. An affidavit of Mrs. Marjorie Hause, widow of Mr. Nelson Hause, was submitted in which she deposed, among other things, that she was the secretary of Flamingo, of which her husband had been president; that he purchased the furniture under the said conditional contract of sale which was "entered into by Flamingo Apartments, Inc. in form but was immediately thereafter and at all times thereafter treated as an asset of H. S. R. Realty Co., Inc." and *that all of the purchase price was paid by H. S. R. Realty Co. Inc.* She then deposed that at the time of the transfer of the interest of Mr. Hause to Mr. Sidell there was a balance due on said contract of $6,379.05, which Mr. Hause paid on July 5, 1958.

The affidavit of Mrs. Hause hardly supports title to the furniture in Mr.

Hause, personally, since she swore that the cost for that which was acquired from Steigman Equipment Company was paid by H. S. R. except for a balance of $6,-379.05 which was paid by Mr. Hause, all in the face of the fact that the actual contract for the purchase was with Flamingo, which was acknowledged therein to have made a down payment of $1,400.

Mr. Sidell testified that he had made two other purchases of furniture for the apartments for approximately $2,500 and $1,200; that each of these purchases, however, was paid for by Ivy Hall, but that he advanced the money for these purchases. He claimed that the cash advances made by him to the corporation plus the furniture rentals which were never withdrawn by him were credited to him. When there was deducted therefrom such moneys which he withdrew for reimbursement there was left a balance in his favor of $16,785.73, which was to be found on the work sheets of the receivers' accountants showing trial balances as of September 30, 1958 and December 23, 1958 and transactions between. But no books were offered from which underlying entries regarding the purchase and payment by Mr. Sidell for furniture could be spelled out.

Mr. Sidell stressed in his argument that the furniture was not shown as an asset on the balance sheet of Flamingo of May 31, 1957, upon the basis of which he stated he bought the stock. Nor was it covered by the chattel mortgage originally accompanying the real estate mortgage. But these circumstances did not show that title to the furniture was in him individually.

Mr. Sidell testified that each month he inserted in a form Number 3479 required to be filed by the Federal Housing Administration a notation: "Advanced to corporation by Leon Sidell on furniture rental" followed by a figure for the rental. He complained that the District Court discredited this testimony when it indicated that the statements had not been produced. Copies of two such forms were submitted in evidence as samples and one of the receivers testified that he had seen some monthly forms with the notations thereon. However, in the state of the evidence before the court even if it were accepted that the forms were so filed no strong documentation of the title to the furniture in Mr. Sidell would have been shown.

Mr. Sidell complains that the District Court found that he did not produce an inventory of the furniture. He points to an amended order of September 28, 1960 in which the court directed the receivers to deliver possession to the Federal Housing Commissioner or his legal representative on September 30, 1960 the premises and chattels in their possession excluding "the chattels against which Leon Sidell, by and through his counsel, Paul Brandeis, Esq., has asserted a claim, an inventory of said chattels is hereto attached and made part hereof and marked Exhibit 'A'." On September 30, 1960, Mr. Sidell, by his counsel, entered into a stipulation with Government counsel in which they referred to the said amended order of September 28, 1960, and specified that the title to the items excluded from that order were in dispute and that all parties had entered into a stipulation of February 29, 1960 that the items of furniture were to be sold free and clear of all claims and liens and that in order to avoid confusion counsel for Mr. Sidell offered no objection to the delivery by the receivers of the items of furniture to the Federal Housing Commissioner "on condition that the items of furniture and the rentals thereof shall be relegated to the fund in the hands of the Receivers."

The list referred to as Exhibit "A" above was an enumeration of pieces of furniture under the caption:

"IVY HALL APARTMENTS, INC., 1220 NORTH BROAD STREET, PHILADELPHIA, PA.

INVENTORY"
It contained only a column headed "Furniture" under which were listed items such as "Beds", "Mattresses" etc., and an opposite column headed "Numbers". It was never referred to in the testimony and how the list came into existence is

**10**

undisclosed. It can in no wise rise to the level of evidence of title in Mr. Sidell and the failure of the District Judge to regard it as evidential was not error.

It was shown by Mr. Sidell that the Assistant United States Attorney in charge of the foreclosure proceedings as well as the receivers expressed approval of his claim. The former evidenced this by recommending to his superiors that they be honored out of the funds in the hands of the receivers who actually petitioned for permission to pay them as aforesaid. Mr. Sidell, lulled, as he says, by the comforting attitudes of counsel and the receivers, refrained from his intended purpose of filing a "claim of property" against the furniture and acquiesced in its sale under the conditions aforementioned. Mr. Sidell had no reason to construe the action of either counsel for the United States or of the receivers as an *agreement* with him that any of his claims would be paid.

The Federal Housing Commissioner had completely rejected the recommendation of the Assistant United States Attorney and insisted that the claims should be resisted. In the stipulation of September 30, 1960, while counsel for the United States agreed that it would not interpose any objection to the *assertion* by Mr. Sidell of his claims, it distinctly provided that nothing contained in the stipulation should be construed as an admission of the validity of them.

To say the least the evidence offered by Mr. Sidell left the determination of his title and, indeed, the title of his alleged predecessor, Mr. Hause, in a high state of confusion. The District Court in its opinion carefully reviewed the evidence and found as follows:

"Sidell's testimony with respect to his ownership of the furniture was confused, contradictory and wholly dissuasive, and was altogether insufficient to establish to our satisfaction the fact of ownership. More-over, he failed to offer a scintilla of evidence bearing either on the value of the furniture or its fair rental value for the periods claimed." United States v. Ivy Hall Apartments, Inc., supra, 197 F.Supp. at 680.

The record herein discloses no "clearly erroneous" finding upon the part of the District Court that the claim of Mr. Sidell to the value of the furniture failed for lack of proof of title thereto. Absent such, its conclusion is entitled to be upheld. 52(a) Fed.R.Civ.P., 28 U.S.C.A.; United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Petition of Oskar Tiedemann and Company, 289 F.2d 237, 240 (3 Cir., 1961); Williams v. The Babcock & Wilcox Company, 262 F.2d 253, 256 (3 Cir., 1959); Hirshhorn v. Mine Safety Appliances Co., 203 F.2d 279, 281 (3 Cir., 1953).

The claim for rental before and during the receivership also falls with the holding that title to the furniture was not established by Mr. Sidell.

The argument is also made that since objection was offered by the United States to the petition of the receivers the burden of proof rested upon it, citing Rasmussen v. Gresly, 77 F.2d 252 (8 Cir., 1935). That case seems to support an opposite conclusion as applied in the instant situation. Moreover, the contention is not cognizable here since it was not raised before the District Court.

In addition to its other reasons for disallowing the claims of Mr. Sidell the District Court invoked the doctrine of "piercing the corporate veil" to the application of which Mr. Sidell objected. Under the circumstances of our disposition of this appeal we deem it unnecessary to examine that contention.

The order of the District Court of September 25, 1961, in which the claims of Leon Sidell were disallowed, will be affirmed.