James GRAY, Executor under the Last Will and Testament of Hamilton Gray, Deceased, Appellant,

v.

UNITED STATES of America.

No. 17353.

United States Court of Appeals Third Circuit.

Argued Dec. 17, 1968.

Decided May 5, 1969.

<hr/>

F. O. Miniutti, Davidson, Miniutti & Nester, Jersey City, N. J., for appellant.

Benjamin M. Parker, Dept. of Justice, Tax Division, Washington, D. C., (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, David M. Satz, Jr., U. S. Atty., Martin Tuman, Asst. U. S. Atty., Washington, D. C., on the brief), for appellee.

Before SEITZ, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge.

This appeal from a decision below[1] in favor of the Government involves the question of the scope of the taxing power over survivors benefits under § 2039 of the Internal Revenue Code, 26 U.S.C.A. § 2039 (1967). Constituting the disputed subject matter of the tax are periodic payments made to decedent's dependent sister under a survivorship benefit plan of the decedent's employer. Specifically, the issue is whether the value of these payments is includable in the gross estate of the decedent for tax purposes.

It has long been recognized that the federal estate tax "is not levied on the property of which an estate is composed * * * [but] is an excise imposed upon the transfer of or shifting in relationships to property [or interests] at death." United States Trust Co. of New York v. Helvering, 307 U.S. 57, 60, 59 S. Ct. 692, 693, 83 L.Ed. 1104 (1939). Congress has altered the operation of the estate tax to meet the changes which the ingenuity of our age, and our tax-conscious economy, have devised to shift "the relationships to property" or interest in things at death. In 1954, Congress enacted § 2039 which was new and did not correspond to any prior provision of existing law. S.Rep. No. 1622, 83d Cong., 2d Sess. (3 U.S.C.Cong. & Adm. News, pp. 4756–4757, 5113–5115 (1954)); H.R.Rep. No. 1357, 83d Cong., 2d Sess. (3 U.S.C.Cong. & Adm.News, pp. 4117, 4457–4459 (1954)); All v. McCobb, 321 F.2d 633, 635 (2d Cir. 1963). The new section frames the taxing power in terms of the operative view and effect of a transaction rather than the technical requirements of rights in property. Bahen's Estate v. United States, 305 F.2d 827, 829, 158 Ct.Cl. 141 (1962).[2]

<hr/>

1. Gray v. United States, 278 F.Supp. 281 (D.N.J.1967) (Judge Coolahan). Following the decision, the district court reopened the case upon appellant's petition for rehearing, and in a supplemental opinion filed February 29, 1968, and a judgment entered on April 23, 1968, the court reaffirmed its original decision. Appellant's Appendix (hereinafter App.) 56a, 57a.

2. The court said in *Bahen*, 305 F.2d at 829:
 Section 2039 was a development of the earlier provisions of the estate tax which spoke of the decedent's "property" and of "transfers" by the decedent in contemplation of or taking effect at death. See Section 811 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811. The new section does not use that phraseology but

Congress intended to include in the gross estate of a decedent for estate tax purposes the value of interests which under traditional common law concepts were never part of the "estate." These interests are considered to pass to others at decedent's death because they were interests "belonging to, accumulated by, or created by or for" the decedent. *Bahen*, *supra* at 834. The court went on to say in *Bahen*:

> Phrased in terms of the earlier concepts of a decedent's "property" "transferred" at his death, Section 2039 declares that annuities or other payments payable by an employer to his employee, and on his death to a beneficiary, constitute his property—created by him through his employer as part of the employment arrangement and in consideration of his continued

services—which is transferred to another at his death. *Id.*

■ With this legislative purpose in mind, observable from a close reading of the statute and its legislative history, and supported by the authorities above cited, we proceed to our duty [3] to determine the application of the statute to the facts of this case.

At the moment of his death on March 10, 1958, Hamilton Gray (whose executor, appellant, brought this action to recover federal estate taxes assessed and paid after an audit) was an employee of Socony Mobil Oil Company. Decedent was a participant in the Socony Retirement Annuity Plan (hereinafter Retirement Plan), which became effective December 31, 1956, and in the Company's Survivorship Benefit Plan for 20-Year

---

frames its operative requirements more directly in terms of particular types of transactions or arrangements involving the decedent. This change is significant. We must pay heed to the precise new form in which Congress cast its net and not become entangled in the older meshes.

3. The courts' role in the interpretation of statutes was established early and was well stated in Heydon's Case, 76 Eng.Rep. 637 (Ex. 1584):

> * * * [T]he office of all the Judges is always to make such * * * construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief * * * and to add force and life to the cure and remedy, according to the true intent of the makers of the act. * * *

The remedy which Congress sought to advance in § 2039, and the mischief to be suppressed, was to make clear its intent to tax the newer forms of benefits and annuities which a decedent may pass on to his survivors. Pre-1954 cases were in disagreement regarding taxability of such benefits as part of a decedent's gross estate under other provisions of the Internal Revenue Code. See discussion in Beal v. C. I. R., 47 T.C. 269, 272, 273 (1966); Fusz v. C. I. R., 46 T.C. 214, 216 (1966); Barr v. C. I. R., 40 T.C. 227, 234 (1963); and Pincus, Estate Taxation of Annuities and Other Payments, 44 Va.L.Rev. 857 (1958). Cf. Higgs' Estate v. C. I. R., 184 F.2d 427 (3d Cir. 1950), in which we held the value of a survivorship annuity

payable to decedent's widow not taxable under prior law.

According to Murphy, Federal Tax Treatment of Annuities, 16 U.Pitt.L.Rev. 311, 320 (1955):

> The annuity problem confronting the Congress when it revised the estate tax provisions arose from nearly twenty years of effort to fit refund and survivorship annuity interests into a tax pattern which was designed to cover other types of property interests but not directed specifically toward annuities. * * * The result was only partially successful and it was accomplished by a judicial and administrative hodge podge which ranged over the whole field of estate tax includability.

Section 2039 was a "tailor-made provision to clear the muddy waters." Joseph, The Estate Tax Impact on Survivor Annuities: How Far Can Section 2039 Reach?, 25 J.Tax. 214 (1966). For a comprehensive and critical analysis of § 2039 in the context of various types of plans and arrangements, see Kramer, Employee Benefits and Federal Estate and Gift Taxes, 1959 Duke L.J. 341; Note, Estate Taxation of Employee Death Benefits, 66 Yale L.J. 1217 (1957); and 2 Mertens, Law of Federal Gift & Estate Taxation (1958), ch. 18. As Mertens so quaintly puts it, until the 1954 Internal Revenue Code, annuities and death benefits "had no real home in the gross estate provisions which could be called their own." *Id.* at 399.

Employees (hereinafter Survivorship Plan), which became effective November 30, 1957.

As a participant in the Retirement Plan, decedent Gray had a vested right upon reaching the mandatory retirement age of 65 to receive annuity payments for the remainder of his life.[4] Gray died prior to retirement and therefore never received any payments from the Retirement Plan. His contributions to the Plan, plus interest to the date of death, were paid to a designated beneficiary.[5]

The Survivorship Plan, a non-contributory plan,[6] provided that if an employee should die in the active service of the company after 20 years' service, as happened here,[7] a beneficiary designated by the employee would receive total benefits equal to twice the annual salary earned prior to death. The beneficiary or beneficiaries which an employee could designate were a spouse, children, parents or other dependents. In the case of "other dependents," the relationship of the dependent to the employee had to be acceptable to the Company at the time of designation, and the beneficiary had to be dependent upon the employee for his or her principal support at the time of designation as well as at the employee's death. An employee had the right to designate a contingent beneficiary who would continue to receive benefits upon the death of the primary beneficiary. In the event no contingent beneficiary was named and the primary beneficiary died, any remaining benefits would lapse.

Several other important features of the Survivorship Plan, relating to the employer's right to revoke or modify the Plan and to the effect of the Plan upon a member's employment status, are set forth in the margin.[8]

---

4. There was also in the Plan an optional early retirement provision after 20 years' service at a reduced annuity, or Gray could have voluntarily withdrawn from the plan at any time with specified lower benefits; at his death he had not done either. Moreover, if Gray were no longer able to participate in the plan, as for example, if his employment had been terminated, he had the right to elect to receive a reduced annuity for the remainder of his life, based on schedules set forth in the Plan, upon reaching retirement age.

Article IX (Withdrawal from the Plan), Section 2 (Vested Right Provision), of the Retirement Plan (App. 31a, 39a), stated:

> If a participating employee withdraws from the Plan after he has completed at least 5 years of accredited service, he may elect either of the following:
> (a) A vested right to receive, commencing on the retirement date specified * * * [in another section] a monthly retirement annuity payable for life computed under Section 2 of Article VI, provided he does not withdraw his contribution, or
> (b) A refund of his contributions with interest computed to the date of withdrawal.

5. Appellant's brief, p. 6.

6. Taxpayer did not contest here, or below, that the contributions to the Survivorship Plan by the employer should be considered, under § 2039(b), as contributed by the decedent, in order to make the benefits payable to decedent's sister subject to the estate tax.

7. See Stipulation of Facts, par. 2. App. 26a.

8. V—MODIFICATION AND REVOCATION The Company reserves the right at any time to terminate, withdraw or modify this Plan in whole or in part at the discretion of the Board. Such termination, withdrawal or modification shall have application to existing employees as well as to future employees, but a benefit which has once accrued in consequence of the death of an employee while this Plan is in effect will be paid in accordance with the Plan as it is at the time of death. * * * (App. 18a).

VI—PLAN NON – CONTRACTUAL The Company may terminate the employment of any employee as freely and with the same effect as if this Plan were not in operation, and it shall not be construed as giving any employee the right to be retained in the service of the Company, or any right (in the event of termination of employment for any reason whatever) to claim any benefit or expectancy thereof; and the Plan shall not be construed as creating any binding obligation on the Company to give or as giving anyone any enforceable right to a benefit except as provided in Section V in the case where a benefit shall have accrued by death while the Plan is in effect. (App. 19a.)

Decedent Gray designated as his beneficiary his semi-invalid sister, Isabella Gray, who had been dependent upon him for her sole support. No contingent beneficiary was named. This litigation concerns the inclusion in Gray's gross estate of the benefits Socony is paying to Isabella Gray.

Under the Survivorship Plan Socony had several optional methods of making the benefit payments.[9] Socony elected to pay Isabella Gray $158.31 per month for life, or until she exhausted the total fund of $35,635.59, whichever period ended first.

The Internal Revenue Service included the full $35,635.59 in the gross estate of Hamilton Gray after an audit of the federal estate tax return.[10] In 1962, the appellant-executor paid the tax deficiency, which had been assessed in the amount of $11,582.72, plus $2,103.93 in interest. After a claim for refund was disallowed in 1963, this suit was brought in 1965 to recover the taxes paid.

The authority for the imposition of the tax by the Government, as previously noted, is § 2039 of the Internal Revenue Code which provides, in pertinent part:

§ 2039. ANNUITIES

(a) *General.*—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

(b) *Amount includible.*—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefor contributed by the decedent. For pur-

---

9. Socony could (a) purchase for the beneficiary an annuity contract from an insurance company with a guaranteed minimum return, or (b) pay the beneficiary an amount equal to the cost of such an annuity contract, or (c) pay out of its own funds the amount or amounts which an annuity contract might have provided.

The Company also had the option to pay the benefits in installments, in such amounts and at such times as it determined. In addition, the Company retained the right to postpone payments for three years and one month after the date of the employee's death (apparently a period of time required by some aspect of the Company's Group Life Insurance Plan, a plan which is not before this court).

Here the payments to Isabella Gray by Socony evidently were started before the three-year period.

10. On appeal to this court the appellant-taxpayer argued that if the survivorship plan arrangement *were* found to be taxable, it would be unfair to include in the gross estate the full or maximum amount

Isabella Gray could receive. Appellant contended that the payments to Isabella constituted a "mere expectancy" at the "uncontrolled discretion" of Socony and therefore had no value at all, or alternatively, that the payments should be valued at less than $35,653.59 in accordance with actuarial tables in the Treasury Regulations. (Appellant's brief, pp. 28–30.)

The district court opinion adverted to the problem of valuation but then stated that it had not been raised as an issue in the case and was, therefore, not being decided. 278 F.Supp. at 287. Our review of the record, including an examination of the appellant's brief in the district court as well as the additional trial memorandum submitted by appellant following reopening of the case (see note 1, *supra*), leads us to agree with the lower court that the issue of valuation was not raised. Hence, it may not be considered on appeal. *See* United States v. Ivy Hall Apartments, Inc., 310 F.2d 5, 10 (3d Cir. 1962).

poses of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

\* \* \* \* \* \*

Treasury Regulations were adopted in final form in 1958 to implement the new IRC section on annuities. 26 C.F.R. § 20.2039–1 (1968). The provisions of the regulations, insofar as they apply to this case, may be summarized as follows:

(1) The term "annuity or other payment," as used with respect to both the decedent and the beneficiary, has reference to one or more payments extending over any period of time. The payments may be equal or unequal, conditional or unconditional, periodic or sporadic;

(2) The term "contract or agreement" includes any arrangement, understanding or plan, or any combination of arrangements, understandings or plans arising by reason of the decedent's employment;

■ (3) The decedent "possessed the right to receive" an annuity or other payment if, immediately before his death, he had an enforceable right to receive pay-

ments at some time in the future, whether or not at the time of his death he had a present right to receive payments. In connection with the preceding sentence, the decedent will be regarded as having had "an enforceable right to receive payments at some time in the future" so long as he had complied with his obligations under the contract or agreement up to the time of his death.[11]

The regulations also contain a number of examples of their proper application. Example (6), virtually identical with the facts at bar, will be referred to later.

Before dealing specifically with appellant's grounds for contesting the inclusion of the benefits of the Survivorship Plan in the decedent's gross estate, it will be instructive to review two decisions by eminent jurists, analyzing § 2039 in depth, which we believe to control the disposition of this appeal.

*Bahen*

Section 2039 received its "judicial baptism"[12] in Bahen's Estate v. United States, *supra*, which was a suit for refund of estate taxes in the Court of Claims, decided in an opinion by Judge Oscar H. Davis. The Government sought to include in the gross estate of the decedent benefits received by his wife under

11. As in Bahen's Estate v. United States, 305 F.2d 827, 158 Ct.Cl. 141 (1962), appellant-taxpayer does not challenge the validity of the Treasury Regulations. "Unless they violate the statute they seek to implement, such Treasury Regulations must be accepted in the areas they occupy. \* \* \* (citation of cases omitted)" 305 F.2d at 829. *See also* discussion of the validity of the Regulations by the lower court. 278 F.Supp. at 284–285.

As the district court stated, the Supreme Court has also spoken to this point:

They [Treasury Regulations] are valid unless unreasonable or inconsistent with the statute. \* \* \* They constitute contemporaneous construction by those charged with the administration of the act, are for that reason entitled to respectful consideration, and will not be overruled, except for weighty reasons. \* \* \* Fawcus Machine

Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397 (1931), reiterated in C. I. R. v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948).

More recently, in Petroleum Heat and Power Co. v. United States, 405 F.2d 1300, 1303 (Ct.Cl.1969), the Court said that under "familiar principles" such regulations have the "effect of law," citing Cohen v. United States, 381 F.2d 383, 180 Ct.Cl. 647 (1967). In *Cohen*, the Court held that where the regulations, including the examples, "are not an unreasonable interpretation of the statute, they must be sustained." 381 F.2d at 388.

12. Note, The Baptism of Section 2039—A New Look At Estate Taxation of Employees Death Benefits Under Nonqualified Plans, 10 U.C.L.A.L.Rev. 619, 621 (1963).

two separate plans adopted by the employer.

The more valuable of the two plans was a Deferred Compensation Plan, initiated by the employer in February 1953, under which a stated maximum sum was payable to the employee's widow and other beneficiaries, at his death either before or after retirement, in sixty equal monthly installments. A key measure of the plan was that if the employee became totally disabled prior to his retirement, the payments would be made to *him* in sixty equal monthly installments so long as he survived, with any unpaid amounts going to his widow or children. The employer's president notified the employees of the company eligible for this plan, which was non-contributory, that it was irrevocable.

The other plan was a Death Benefit Plan, adopted earlier in January 1952, which provided that if an employee died after ten years' service and prior to retirement, the employer would pay an amount equal to three months' salary to his widow.

At the time of decedent's death, he had not retired nor was he eligible for retirement.

In deciding whether the benefits payable to decedent's widow under the plans were includable in the gross estate, Judge Davis said:

> We need consider only Section 2039, a new provision added to the estate tax

in 1954 which for the first time established specific rules for the coverage of annuities and other survivor benefits. 305 F.2d at 829.

The big sum the Government was attempting to net in *Bahen* was the $100,000.00 payable to the widow under the Deferred Compensation Plan. In explicit fashion, and with great clarity, Judge Davis' opinion walks us through the elements of taxability under § 2039, and its implementing regulations, to support the claim of the Government under the Deferred Compensation Plan:

(1) The plan was a "form of contract or agreement" under the statute because even though created by the company unilaterally, it was expressly made irrevocable.[13]

(2) Under the regulations the receipt by the widow of the $100,000.00 benefit in sixty equal installments met the "annuity or other payment" to the beneficiary requisite of § 2039(a).

(3) The requirement that at his death the decedent "possessed the right to receive * * * [an] annuity or [other] payment" involved two problems:

(a) The court considered the compensation payable to decedent in the event he became totally incapacitated during his lifetime prior to retirement as a type of "annuity or other payment" within the purview of the statute.[14]

---

13. As discussed later, a declaration of "irrevocability," while helpful to the taxing authorities in *Bahen* with respect to the Deferred Compensation Plan, is not an essential ingredient of the "contract or agreement" requirement as applied under the circumstances in the present appeal.

14. *Cf.* Kramer v. United States, 406 F.2d 1363 (Ct.Cl. February 14, 1969), which involved the interpretation of an agreement in a closely held corporation for § 2039 purposes. The agreement provided,

> (1) that decedent, who had been president of the corporation, would be em-

ployed as general manager at a salary of $12,000 a year;

> (2) in the event of disability or illness, decedent would be retained as "advisor and counsellor" at an annual "salary" of $12,000, and

> (3) in the event of decedent's death while serving the corporation under either of the above provisions, his wife would receive compensation in the amount of $150 a week for the remainder of her life.

The United States claimed the benefits to the wife to be includable in the gross estate of the decedent under § 2039, and

(b) The court held that the potential right which the decedent had to receive the disability payments, *even though the right never materialized in his lifetime*, satisfied the condition that he must possess the right to receive an annuity or payment at his death. The specific holding by the court on this point is important because of its direct applicability to the appeal we are considering in the Gray estate:

We hold, however, that at his death Mr. Bahen did "possess the right" to receive the disability payments in the future if certain conditions were fulfilled, and therefore that the alternative requirement of Section 2039 is met. The intentional juxtaposition in the statute of amounts "payable" and those the decedent "possessed the right to receive" indicates that the former relates to the present (i. e. at time of death) and the latter to the future. The Regulations make clear that, in circumstances like these, the decedent's interest in future benefits, even if contingent, is sufficient. [Footnote omitted.] Where the employer has offered a plan of this kind, the employee's compliance with his obligations to the company gives him "an enforceable right to receive pay-ments in the future, whether or not, at the time of his death, he had a present right to receive payments." 305 F.2d at 831.

The court refused to make any distinction, as asserted by the taxpayer in *Bahen*, between possessing the right to receive a *retirement annuity* on the contingency of living to retirement age and the right to receive *disability payments* on the contingency of becoming totally disabled prior to retirement. The important point, according to the court, was that the statute and the regulations contemplate the right to receive sums becoming due in the future regardless of the nature of the contingency.

(4) Section 2039 further requires that the decedent's right to receive the annuity or payment must be possessed "for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death." The court said the decedent had the right to receive the contingent total disability payments right up to the time of his death.

(5) The final element of coverage under the statute, set forth in § 2039(b), requires that the purchase price of the annuity or other payment must have been contributed by the decedent. The statute makes this requirement easy to

the executors sued for a refund after payment of the tax had been made.

The Court of Claims held that while the payments to the wife met the "annuity or other payment receivable by any beneficiary" requirement of § 2039(a), there was lacking one of the other alternative requisites of the statute,—the possession by the decedent at his death of the right to receive an annuity or payment. The court refused to consider the second provision in the agreement, i. e., the annual payments promised to the decedent in the event he became disabled but continued as an advisor and counsellor (which never materialized), as a type of retirement annuity plan. The court would not analogize this arrangement to the provision in the *Bahen* Deferred Compensation Plan whereby the decedent was to receive certain payments in the event he became totally disabled prior to his retirement. It was the requirement for continuing to furnish advice and counsel, even if he became disabled, that led the majority of the court to distinguish *Bahen*. The court considered the payments as a commitment to continue to pay a "salary" rather than the kind of "annuity" presumably contemplated under § 2039(a). *See* Fusz v. C. I. R., 46 T.C. 214 (1966). This kind of taxability gap in the salary continuation type of arrangement was foreseen in Pincus, *supra* note 3 at 866.

Judge Davis, the author of the *Bahen* opinion, dissented, asserting that the true purpose of the payment to the decedent in the event of disability was in effect the same as that in *Bahen*, and that the requirement for rendering services was of little significance, if not wholly illusory.

The facts in *Kramer* are clearly distinguishable from the case at bar.

meet by providing that the employer's contribution for the purchase price "shall be considered to be contributed by the decedent if made by reason of his employment."

Having fit the Deferred Compensation Plan benefits into the mold of § 2039, Judge Davis proceeded to the more difficult task of deciding whether the three months' salary received by the widow under the Death Benefit Plan was properly part of the decedent's gross estate. The court conceded that standing alone the amount received under the Death Benefit Plan would not be taxable because under *that* Plan there was no right possessed by the *decedent* at his death to receive "an annuity or other payment." The court concluded, however, that the Death Benefit Plan payment to the widow *was* taxable, and this is a decisive precedent in disposing of the Gray appeal before us, by holding the two plans in *Bahen,* i. e., the Deferred Compensation Plan and the Death Benefit Plan, to constitute in combination a "form of contract or agreement" for the purpose of § 2039.[15] Thus decedent's right in *Bahen* to receive the potential total disability payments under the *Deferred Compensation Plan* met the requirement that the decedent possess the right to receive an annuity or payment at his death so as to make the payment received by the widow under the *other* part of the overall contract or agreement, i. e., the *Death Benefit Plan,* subject to inclusion in the gross estate.

Judge Davis put it this way:

[T]he Government makes another point which we do accept as bringing the Death Benefit Plan under Section 2039. The suggestion is that this Plan should not be viewed in isolation but must be considered together with the Deferred Compensation Plan—as if both arrangements were combined into one plan, providing two types of benefits for beneficiaries after the employee's death but only one type of benefit (disability compensation) to the employee himself. There is some factual support, if that be necessary, for looking at the two plans together, since the Death Benefit Plan was adopted in January 1952 and the Deferred Compensation Plan only a year later in February 1953.[16] There appears to be a common genesis and a unifying thread. 305 F.2d at 835.[17]

### *All*

All v. McCobb, 321 F.2d 633 (2d Cir. 1963), decided by Judge (now Justice) Marshall, involves a somewhat different factual context. There were also two plans in issue which had been adopted by the employer Standard Oil Company of New Jersey, one a Retirement Annuity Plan and the other a Death Benefit Plan. Under the Retirement Plan, the decedent who had already retired prior to his death received a fixed retirement allowance. The Death Benefit Plan provided for the payment to the surviving dependents of an employee who dies following retirement of "benefits equal to twelve times the monthly retirement allowance paid to the annuitant, less payments provided by law by the Government" under Social Security.

At issue in *All* was the includability in the decedent's estate of the payments

---

15. For this holding the court relied squarely on Example (6) of the Treasury Regulations, *infra* note 21.

16. In our case the two plans were adopted only eleven months apart, the Retirement Plan on December 31, 1956, and the Survivorship Plan on November 30, 1957. (App. 43a, 8a).

17. Relying on this same approach for taxability in the Gray estate, appellee states in its brief, p. 4:

These two employee benefit plans [the Retirement Plan and the Survivorship Plan] which have a common genesis and unifying thread in a co-ordinated system of annuities for the retired employee and the employee's dependent or beneficiary were necessarily in consideration of the employee's services to his employer, and do supplement each other. * * *

to which the widow was entitled under the Standard Oil Death Benefit Plan.[18]

Judge Marshall followed the step-by-step analysis of § 2039 by Judge Davis in *Bahen* in holding the widow's payments under the Death Benefit Plan to be part of the gross estate.

The key point in *All*, which makes the decision a compelling precedent for the disposition of the present appeal, is Judge Marshall's holding that "for purposes of determining the applicability of § 2039, the [Retirement] Annuity Plan and the Death Benefit Plan are to be considered as having been integrated into a single plan," citing Example (6) of the Treasury Regulations, § 20.2039–1(b) (2), *infra* note 21. 321 F.2d at 636.

Turning now to the main prongs of appellant's attack on the inclusion of Isabella Gray's benefit payments in her brother's gross estate, the taxpayer argues:

(1) that the two plans may not be considered in combination as a "form of contract or agreement" under § 2039;

(2) that there was no enforceable contract or agreement; and

(3) that even if the contract or agreement requirement were met, there was no annuity or other payment payable to the decedent, nor did the decedent possess the right to receive such annuity or payment, at the time of his death.

*Do Socony's Retirement Plan and Survivorship Plan Viewed Together Constitute a "Form of Contract or Agreement" Under § 2039?*

Although the two Socony Plans involved here are separate in that they were not created by the same document,[19] nor initiated at the same time,[20] nor did they make any reference to each other, the purpose of the two plans clearly was to form an integrated program to assure the employees an annuity upon retirement as well as to provide benefits to designated survivors on the death of an employee before his retirement.

The applicable part of the Treasury Regulations, followed in *Bahen* and *All*, § 20.2039–1(b) (ii), states that the "term 'contract or agreement' includes any arrangement, understanding or plan, *or any combination of arrangements, understandings or plans* arising by reason of the decedent's employment." (Emphasis added.)

By reason of his employment, decedent Gray had a combination of plans providing (a) for an annuity upon reaching the age of retirement (Retirement Plan), or (b) if he died before retirement but after 20 years' service, for certain benefit payments to his designated beneficiary (Survivorship Plan). Example (6) of the applicable Treasury Regulations, set forth in the margin,[21] specifically contemplates the combined operative effect of

---

18. Though unrelated to our problem, the lower court in *All* had ruled that the Death Benefit Plan was actually an insurance program and therefore specifically exempted from § 2039. The court of appeals reversed this holding and concluded that the Death Benefit Plan did come under this section of the Internal Revenue Code.

19. Appellee seems to assert (brief, p. 7) that each of the plans here may be considered separately as a "form of contract or agreement" under § 2039(a). We need not resolve the validity of this contention since the two plans combined clearly meet this requirement of the statute, as appellee also recognizes and argues.

20. As has been indicated, the two plans were adopted only eleven months apart.

21. *Example (6)*. The employer made contributions to two different funds set up under two different plans. One plan was to provide the employee, upon his retirement at age 60, with an annuity for life, and the other plan was to provide the employee's designated beneficiary, upon the employee's death, with a similar annuity for life. Each plan was established at a different time and each plan was administered separately in every respect. Neither plan at any time met the requirements of section 401(a) (relating to qualified plans). The value of the designated beneficiary's annuity is includible in the employee's gross estate. All rights and benefits accruing to an employee and to others by reason of the employment (except rights and benefits accruing under certain plans meeting the require-

two separate plans established by a decedent's employer in determining whether or not benefits derived from either one of the plans shall be includable in the gross estate. All v. McCobb, *supra* at 636.

Judge Davis' comments in *Bahen* on the portion of the Treasury Regulations, § 20.2039–1(b) (ii), quoted above, and on Example (6), are wholly persuasive on the "contract or agreement" issue:

> Example (6) * * * describes two separate plans neither of which, by itself, would meet the requirements of Section 2039 but which would satisfy those requirements if the plans were considered as one. The Regulations indicate that the plans are to be viewed together, for the reason stated above in the text.[22]

> Effect must be given to this declaration, adopted pursuant to the Treasury's recognized power to issue regulations and not challenged by plaintiff, since it does not violate the terms or the spirit of Section 2039. In view of the general purpose of the statute to cover a large share of employer-contributed payments to an employee's survivors, it is not unreasonable to lump together all of the employer's various benefit plans taking account of the employee's death * * * in order to decide whether and to what extent Section 2039 applies to his estate. There is no immutable requirement in the legislation that each plan separately adopted by a company must be considered alone. One good ground for

rejecting that position is to prevent attempts to avoid the reach of the statute by a series of contrived plans none of which, in itself, would fall under the section.

This directive in the Regulations that all rights and benefits "are to be considered together"—read with another part of the same Regulation which defines "contract or agreement" under Section 2039 to cover "any combination of arrangements, understandings, or plans arising by reason of the decedent's employment"—requires the two plans of the C.&O. to be deemed a coordinated whole for the purposes of Section 2039. On that view the payments under the Death Benefit Plan were includable in the decedent's gross estate for the reasons given above with respect to the Deferred Compensation Plan. If the two Plans are integrated into one, each element required for coverage of all payments is present.[23]

[Footnotes omitted.]

Appellant seeks to distinguish *Bahen* on the ground that the Deferred Compensation Plan in that case was "irrevocable." But this was not decisive in *Bahen*. The payments under the Death Benefit Plan in that case which the court said would not have been taxable standing alone, were includable in the gross estate because of the combined treatment of the two plans in *Bahen* as a unitary contract or agreement.

Likewise, in the case at bar, the benefits to Isabella Gray under the Survivor-

---

ments of section 401(a) (see § 20.2039–2)) are considered together in determining whether or not section 2039(a) and (b) applies. The scope of section 2039 (a) and (b) cannot be limited by indirection. Treasury Regulations, § 20.2039–1 (b) (2).

**22.** 305 F.2d at 835 n. 15.

**23.** *Id.* at 835, of 305 F.2d.
A commentator on § 2039 has said:
[T]he regulations have the salutary effect of closing an apparent loophole in the statute. Otherwise, a death benefit *contract* might later be super-imposed on an existing annuity or retirement

plan, with the *same effect* as a taxable plan but without a tax being payable. Unless broadly construed, the "such contract" provision of the statute seems inconsistent with the general purpose to tax survivor benefits payable by reason of the decedent's employment. Pincus, *supra* note 3 at 869.
We agree. The words "any form of" which precede and modify the term "contract or agreement" in § 2039(a) call for an expansive interpretation of the Congressional intent to draw the burgeoning array of employee-survivor benefit plans within the reach of the federal estate tax.

ship Plan, standing alone, may not have been includable in decedent's gross estate. These benefits are taxable, however, because of the existence of the Retirement Plan, which the district court properly held [24] should be considered in combination with the Survivorship Plan as a contract or agreement under § 2039.[25]

■ We conclude that there is simply no merit to the taxpayer's contention that the combination of the two plans here may not be treated as a contract or agreement under § 2039.

### *Was the "Contract or Agreement" Enforceable?*

We believe that the preceding discussion explaining and supporting the treatment of the two separate plans as a contract or agreement under § 2039 is sufficient to dispose of this issue. However, the taxpayer presses hard his contention that there is no *enforceable* contract here.

We have already observed that § 2039 is a departure from common law notions, and that Congress did not necessarily intend that the words used should be considered in terms of traditional property or contract law concepts so that, as *Bahen* suggests we should "not become entangled in the older meshes." 305 F.2d at 829.

■ We do not need to decide in this case, however, whether in using the phrase "contract or agreement" in § 2039 Congress intended to create a unique, "federal" type of contract relationship limited to estate tax purposes as we believe that Socony's obligation to pay Isabella Gray is enforceable under regular contract law principles.[26]

The taxpayer's focus on decedent Gray's possible inability to enforce the Survivorship Plan is misplaced; it is Isabella Gray's right to enforce Socony's obligation with which we should be concerned. And we find that Isabella Gray may enforce what is a matured contract right as an intended third-party beneficiary.[27]

Must we test the viability of the third-party beneficiary contract here by the law of the state of the decedent? In Miller v. United States, 387 F.2d 866 (3d Cir. 1968), we said, in an estate tax appeal:

> The extent of the decedent's interest in the testator's estate under the power to consume must be determined by Pennsylvania law, although the taxability of the interest will be determined by federal law. [Footnote omitted.] 387 F.2d at 868.

Assuming that the *Miller* case formula applies to the determination of the question of the enforceability of the contract here, we believe that the law of New Jersey (the state of the decedent), state law generally, and the Restatement of Con-

---

24. 278 F.Supp. at 284.

25. The court said: "All of the law in the area appears to support the [United States]."

26. Thus we do not need to reach today the issue of whether an established or consistent course of performance is sufficient to qualify as a "contract or agreement," as suggested in Example (4) of Treasury Regulations under § 2039. This example indicates that if the employer "was under no obligation" to pay the beneficiary, but does so anyway, the payments may be included in the decedent's gross estate if "it can be established that the employer has consistently paid an annuity under such circumstances," in which case the annuity

would "be considered as having been paid under a 'contract or agreement'." *See generally* Barr v. C. I. R., 40 T.C. 227, 235 (1963).

27. Supporting this view, it has been said: The employment relationship alone would seem sufficient to justify a tax, since that relationship is the generating source and provides the motive for the payment of benefits to the decedent's family. *That the benefits originate in a third party beneficiary arrangement* rather than a transfer of invested property only points up the essentially intangible character of modern forms of wealth. The shift of benefits is no less real because of the absence of a corpus or *res*. (Initial emphasis added). Pincus, *supra* note 3 at 870–871.

tracts support the concept of enforceability we now proceed to outline.

The contract rights to be enforced arise from the offer made by Socony to its employees to participate in the Survivorship Plan. Decedent Gray accepted this offer and designated his sister as the beneficiary. Socony then had by way of consideration a satisfied employee who continued in its employ. On his part, decedent was assured that if he died as a Socony employee prior to his retirement, and the Survivorship Plan were still in effect, Isabella would receive certain benefits.[28] Isabella Gray, as an intended beneficiary,[29] could enforce the contract.[30]

Decedent Gray's designation of Isabella Gray as the beneficiary, and Socony's acceptance, place her in the class of an intended beneficiary. In fact, the Survivorhip Plan by its own terms contemplates enforcement by the named beneficiary.[31]

As a beneficiary of a plan which was subject to "modification and revocation" during the lifetime of the employee-decedent, Isabella Gray had rights similar to the beneficiary of a life insurance contract where the insured may change the beneficiary at will.

 Williston calls this a vested contract subject to divestment: "Where the policy reserves to the insured a power to change the beneficiary, there is a defeasible vested interest in the latter." 2 Williston, Contracts, § 369 (3d ed. 1960). The life insurance analysis by Williston has been applied to situations similar to the instant appeal.[32]

28. It is important to note that the Socony Survivorship Plan is virtually identical to one of the examples of covered contracts in the Congressional Committee Reports on the bill ultimately enacted as § 2039. The Senate Report and the House Report each states:

The following are examples of contracts, but are not necessarily the only forms of contracts, to which this section applies:

\* \* \* \* \*

(4) A contract or agreement entered into by the decedent and his employer, under which at decedent's death, prior to retirement or prior to the expiration of a stated period of time, an annuity or other payment was payable to a designated beneficiary if surviving the decedent. S.Rep. No. 1622, 83d Cong., 2d Sess. (3 U.S.Cong. & Adm.News, p. 5114 (1954)); H.R.Rep. No. 1337, 83d Cong., 2d Sess. (3 U.S.Cong. & Adm.News, 4458 (1954)).

29. Restatement (Second) of Contracts § 133 (Tent.Draft No. 4, 1968) no longer distinguishes between donee and creditor beneficiaries but only sets out a class of "intended" beneficiaries:

§ 133. Intended and Incidental Beneficiaries.

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) The performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the promise manifests an intention to give the beneficiary the benefit of the promised performance.

\* \* \* \* \*

30. Restatement (Second) of Contracts § 135 (Tent.Draft No. 3, 1967) states: § 135. Creation of a Duty to Beneficiary.

A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.

31. V—MODIFICATION AND REVOCATION The Company reserves the right at any time to terminate, withdraw or modify this Plan in whole or in part at the discretion of the Board. Such termination, withdrawal or modification shall have application to existing employees as well as future employees, *but a benefit which has once accrued in consequence of the death of an employee*, while this Plan is in effect *will be paid* in accordance with the Plan as it is at the time of death \* \* \* (Emphasis added.) (App. 18a.)

32. Although on the question of enforceability of the Survivorship Plan by Isabella Gray we analogize to the life insurance field, we recognize that this plan is not a life insurance contract.

In Roberts v. Ellis, 229 Or. 609, 368 P.2d 342 (1962), as part of the contract of employment the employer agreed, *inter alia*, to pay to the employee's wife, if she should survive him, a sum of $1,000.00 per month. In upholding the widow's right to payment, the Oregon court said:

\* \* \* [T]he widow's rights, created during the husband's lifetime, became absolute upon his death \* \* \*. The situation is analogous to that of a contingent remainderman whose estate can be defeated by a variety of circumstances over which he has no control, e. g., the birth of an heir to the holder of a limited fee, etc. A contingent remainder may become a vested remainder when a named person dies because it is no longer within the power of such a person to defeat the estate. \* \* \* 368 P.2d at 345.[33]

A New Jersey case, Bendit v. Intarante, 70 N.J.Super. 116, 175 A.2d 222 (1961), was a suit by an executor to recover for the estate of his decedent the proceeds of an agreement made by the decedent, Salvatore La Spada, and one defendant, whereby the latter was to pay the decedent $100.00 per week for ten years and, in the event of his death during that period, the payments were to be continued to the decedent's widow. Although the precise issue before the court was the testamentary nature of the document, i. e., whether it was revocable, the New Jersey court held that the widow as an intended third-party beneficiary could enforce the contract. The court said:

An otherwise valid and binding contract for the payment of monies due or to become due to the promisee is not invalidated because one of its provisions calls for payment of the balance due to a third party, in the event of the promisee's death before receiving payment in full. \* \* \* [The agreement] conveyed a present equitable right upon Mrs. La Spada as a third-party beneficiary, which ripened into full ownership of the balance due upon her husband's death. \* \* \* Restatement, Contracts, sec. 133(a) and 135(a). \* \* \* The contract was valid and enforceable, and the weekly payments became payable to Mrs. La Spada upon her husband's death. 175 A.2d at 229.[34]

---

*See* All v. McCobb, 321 F.2d 633, 636 (2d Cir. 1963).

The revocability of the Survivorship Plan does not preclude the entire combined arrangement between the employer and the decedent from being a "form of contract or agreement" under § 2039(a). As part of the overall contract, decedent continued in the employ of Socony in return, *inter alia*, for the promise to pay death benefits to his designated beneficiary. The fact that the employer reserved the option of terminating the promise, i. e., the Plan, an option not exercised, did not obviate the validity of the contract. The concept of mutuality is in the limbo of discarded contract formalism and is no longer relevant to economic reality, at least not to the kind of arrangement involved here. *See generally* 1A Corbin on Contracts §§ 152, 153, 163, 167 (1963).

As appellee states in its brief, p. 21, "as of the date of death of the decedent, vis-a-vis Isabella Gray, the Survivorship Benefit Plan was irrevocable." The court below placed great emphasis on the need to focus on "the moment *of* death" in determining the existence of a contract or agreement meeting the requirements of § 2039(a), 278 F.Supp. at 285–286, citing, *inter alia*, Goodman v. Granger, 243 F.2d 264 (3d Cir.), cert. denied, 355 U.S. 835, 78 S.Ct. 57, 2 L.Ed.2d 47 (1957), a case applying the prior law as to taxability of interests transferred at death.

Even before the 1954 Internal Revenue Code and § 2039, a sufficient property interest was found in a decedent's bonus plan so as to make the funds paid to the beneficiary includable in the gross estate where the decedent's right to the bonus was vested, subject to the possibility of divestment or forfeiture. Estate of King, 20 T.C. 930 (1953).

33. *Accord*, Buehler v. Buehler, 323 S.W.2d 67 (Tex.Civ.App.1959).

34. Our reliance on this case may be questioned in light of In re Estate of Posey, 89 N.J.Super. 293, 214 A.2d 713 (Union County Court Probate Div. 1965), aff'd per curiam, 92 N.J.Super. 259, 223 A.2d 38 (1966). We believe the case is distinguishable. In *Posey* the decedent had a credit union account agreement through her employer which stated that on her

In contending that decedent Gray did not have an enforceable right in the Survivorship Plan, an issue we need not decide, appellant fails to consider that Isabella Gray, by reason of surviving the decedent, had a right to enforce payment under a "form of contract or agreement," here a third-party beneficiary contract. As was well stated by Judge Goodrich in Isbrandtsen Co. v. Local 1291, 204 F.2d 495, 496–497 (3d Cir. 1953), the focus of the court should be on the rights of the party for whose benefit the contract was made.

The taxpayer also argues that by the very terms of the Survivorship Plan it is non-contractual and unenforceable. Not only does this contention ignore the enforcement provision of the Plan previously cited,[35] but it misconstrues the clear import of Part VI of the Survivorship Plan, somewhat ineptly labeled "Non-Contractual." [36] The purpose of the "non-contractual" provision, which actually reaffirms the enforceable rights of beneficiaries under the Survivorship Plan, is to make unambiguous the fact that this plan is not a contract of employment but rather a separate arrangement arising out of the employment relationship.

### Did Decedent Possess a Right to Receive an Annuity or Other Payment Under Section 2039(a)?

Appellant argues that the decedent was not possessed of the right to receive an annuity or other payment, as required under § 2039(a). In resolving the issue posed under this heading, a searching anaysis of this part of § 2039 is in order.

First, an explanation regarding the construction and use of the phrase "annuity or * * * payment" is necessary. This phrase is used three times in § 2039 (a). Although it is proper to give the same definition to a word or phrase used several times in a section of a statute, the facts here do not require us to *focus* on the same word each time the phrase is used. We may focus on the word "payment" in one use of the phrase and on the alternative word "annuity" in another application of the phrase.[37]

---

death the funds would go to a named beneficiary. The court found that this was an attempted testamentary disposition. Moreover, the court said this arrangement was not a third-party beneficiary contract capable of enforcement by the beneficiary because, *inter alia*, it was not like a life insurance contract and no rights vested in the beneficiary (even subject to divestment) during the lifetime of the donor. *Cf.* In re Koss' Estate, 106 N.J.Eq. 323, 150 A. 360 (1930); First Nat'l State Bank of New Jersey v. Carlyle House, Inc., 102 N.J.Super. 300, 246 A.2d 22, 34 (1968).

A New Jersey statute N.J.S.A. 2A:15-2, provides:

A person for whose benefit a contract is made, either simple or sealed, may sue thereon in any court and may use such contract as a matter of defense in an action against him although the consideration of the contract did not move from him.

In Moorestown Management. Inc. v. Moorestown Bookshop, Inc., 104 N.J. Super. 250, 249 A.2d 623 (1969), the court said:

N.J.S.A. 2A:15-2 provides for a suit by a person for whose benefit the contract is made although the consideration of the contract did not move from him. Under New Jersey common law the courts have recognized the right of a third-party beneficiary to enforce a contract if he is a donee beneficiary (if in buying the promise the promisee intends the promised performance as a gift to the third party), or creditor beneficiary (if in buying the promise the promisee intends the third party to receive the performance in satisfaction of a real or supposed duty or obligation owed by the promisee). * * *

In order to qualify as a third-party donee or creditor beneficiary the applicant must prove that the contract was made and intended for him. If he does this, he has a sufficient interest in the enforcement of the promise so as to entitle him to sue for damages or to invoke the aid of a court of equity if the remedy at law is inadequate. * * * 249 A. 2d at 627–628.

35. *Supra* note 31.

36. For the text of this portion of the Plan, see note 8 *supra*. (App. 19a)

37. It should be noted that the third time the phrase is used in § 2039(a) it is

Under the facts here presented, we read the first use of the phrase "annuity or other payment" (focusing on the word "payment") to refer to the money actually paid or to be paid to the beneficiary under the Survivorship Plan. For our purposes the second (and therefore the third) use of the phrase refers to the annuity provided for under the decedent's Retirement Plan. Thus in the second and third use of the phrase the focus will be on the word "annuity."

This means, then, that the retirement "annuity" which the decedent Gray possessed the right to receive at his death need not be under the same plan as the "payment" receivable by the surviving beneficiary. That the decedent need not have possessed any right or property interest in the benefits payable to the *survivor* is made clear in Beal v. C. I. R., 47 T.C. 269, 273 (1966). The court said:

> * * * [W]e can perceive no reason to limit the section only to those payments to a beneficiary which are a continuation of the payments to the decedent or to those payments to a beneficiary which are a substitution for amounts otherwise payable to the decedent. 47 T.C. at 272.

Secondly, at the risk of prolonging this opinion unduly, it may be helpful to analyze § 2039(a) in terms of a hypothetical (to use the language of the logician), viz., if $A$ and $B$ then $C$.[38]

$A$ consists of all the language in the second part of § 2039(a), starting with the word "if" following the parenthesis,[39] explaining the rights the decedent must have had. $B$ is described in the first part of § 2039(a),[40] and is the money payable to the beneficiary who takes by reason of surviving the decedent. If $A$ and $B$ are present, then the conclusion $C$ follows,[41] the payments to the beneficiary are includable in the gross estate of the decedent for tax purposes.

Isabella Gray, the beneficiary, received a "payment" by reason of surviving the decedent. Thus element $B$ of the hypothetical is present.

To find $A$ requires further interpretation. If, under the contract, "either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death," the decedent

(1) had an annuity or other payment payable to him, or

(2) was possessed of the right to receive such annuity or payment,

then element $A$ has been satisfied.

Although at the moment of his death the decedent Gray did not have the benefits of the Retirement Plan "payable" to

prefaced by the word "such." We interpret this prefatory word to require that if, when reading the phrase in its second use, the focus is on the word "annuity," the focus must be consistent in the third use of the phrase. This consistency requirement between the second and third use of the phrase demanded by the word "such" is not required when reference is made to the first use of the phrase in § 2039(a).

38. Actually, as should be apparent from the further discussion, the formula is somewhat more complicated. It should read if $A$ [i. e., if $X$ or $Y$] and $B$ then $C$.

39. $A$ equals " * * * if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment either

alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death."

As alternative parts of $A$,

$X$ equals " * * * an annuity or other payment was payable to the decedent * * *"; and

$Y$ equals " * * * the decedent possessed the right to receive such annuity or payment, * * *"

40. $B$ equals " * * * an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement * * *"

41. $C$ equals " * * * The gross estate shall include the value of an annuity or other payment * * *"

him, he "possessed" a vested right to receive such an annuity.[42]

The decedent's vested right [43] in an annuity under the Retirement Plan is sufficient to meet the requirements of element *A*. Therefore, both conditions *A* and *B* are present, leading to conclusion *C*, i. e., the includability of Isabella Gray's benefits under the Survivorship Plan in the decedent's gross estate.

This analysis is clearly supported by *Bahen, supra,* which on the requirement of "possessed the right to receive" was not even as strong as the facts here. It will be recalled that in *Bahen,* the "annuity or payment" which the decedent possessed was the right to receive certain compensation in the event of becoming totally disabled during his lifetime prior to retirement, a contingency which the

taxpayer there argued did not reach the more likely ripening of a right to receive an annuity upon reaching retirement age. The court held that either contingency, total disability or retirement, was sufficient to meet the "possessed the right to receive such annuity or payment" condition under § 2039(a). 305 F.2d at 831–832.[44]

One final matter need be discussed. Section 2039(c) of the Internal Revenue Code and § 20.2039–2 of the Regulations, as amended, provide that if one of the plans in a combined plan situation qualifies for exemption under 26 U.S.C.A. § 401(a), there is no taxability under § 2039(a).[45] Appellant did not raise this issue below nor was it raised in the brief to this court. At oral argument, however, appellant's counsel intimated, apparently for the first time, that the So-

42. In Estate of Wadewitz, 339 F.2d 980, 983 (7th Cir. 1964), a § 2039 estate tax case, the court said:

> Petitioners argue that because Wadewitz's right to future payments was contingent upon his retirement, he never possessed a choate right to receive in the future. The argument is untenable. The conditional right to receive in the future must be distinguished from the right to receive payments immediately upon the happening of the condition. Wadewitz from the beginning of the contract until his death had an enforceable right to receive future payments. *See* 2 Mertens, *supra* note 3 at § 18.11 —Meaning of "Possessed the Right to Receive."
>
> When the new annuities section speaks of a right "possessed" it undoubtedly means an enforceable right under the factual circumstances existing at the time of death. In general, *this test is met if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future,* whether or not, at the time of his death, he had a present right to receive payments. The regulations state that "the decedent will be regarded as having had 'an enforceable right to receive payments at some time in the future' so long as he had complied with his obligations under the contract or agreement up to the time of his death." * * *

(Footnotes omitted; emphasis added.)
Example (3) of the Regulations is also instructive on this point. There, in a situation in which an employee is entitled to a retirement annuity at age 60, with certain benefits to a survivor if death occurs before retirement, and the employee dies at age 49, it is stated,

> * * * since, immediately before his death, the employee had an enforceable right to receive an annuity commencing at age 60, he is considered to have 'possessed the right to receive' an annuity as that term is used in section 2039(a). * * *

43. *See* note 4 *supra* and the text thereto.

44. Succinctly put, " * * * the 'possessed the right' test is satisfied only if immediately before his death the decedent had an enforceable right to receive payments at some future date," and this test is met under the Regulations "so long as * * * [the decedent] had complied with his obligations under the contract or agreement up to the time of his death," citing § 20.2039–1(b) (ii). Pincus, *supra* note 3 at 864–865.

45. *See* Example (6) of the Treasury Regulations, *supra* note 21. For discussion of the exemption of qualified plans under § 2039(c), see Sporn, 26 N.Y.U. Institute on Federal Taxation 1229, 1236 (1968) ; Pincus, *supra* note 3 at 859–864; and 2 Mertens, *supra* note 3 at 428–436.

cony Retirement Plan may be a qualified plan under § 401(a).[46]

■ We have held that in civil matters an issue not raised below may not be considered on appeal: United States v. Ivy Hall Apartments, Inc., 310 F.2d 5, 10 (3d Cir. 1962).[47] We, therefore, may not consider appellant's § 401(a) contention at this stage. It could have been, and should have been, raised below.

For the reasons we have expressed at length in this opinion, the decision of the district court will be affirmed.

ALDISERT, Circuit Judge (dissenting).

I disagree with the majority's interpretation of what I consider to be the clear and unsophisticated language of the Annuity Estate Tax Statute, § 2039 and its implementing Tax Regulation 20.2039 (1) (b) (ii).

The statute subjects to inclusion in the taxable estate, proceeds from "such contract or agreement, an annuity or other payment [which] was payable to the decedent, or [which] the decedent possessed the right to receive * * * either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death."

The pertinent tax regulation provides that "[A]n annuity 'was payable' to the decedent if, at the time of his death, the decedent was in fact receiving an annuity or other payment, whether or not he had an enforceable right to have the payments continued." The decedent "possessed the right to receive an annuity or other payment if, immediately before his death, the decedent had an enforceable right to receive payments at some time in the future, whether or not, at the time of his death he had a present right to receive payments."

The two plans which were combined by the Commissioner of Internal Revenue to justify the imposition of the tax involved a retirement plan for the benefit of the decedent, and a survivorship plan for the benefit of a named beneficiary. At those critical moments which controlled the theory of tax imposition, neither plan qualified for taxation under the plain and ordinary meaning of the language of the statute and regulation.

With respect to the retirement plan, the only plan of the two under which the decedent himself could benefit, the critical moment is "at the time of his death". At the time of Mr. Gray's death he was not retired. He was still working. He was receiving his ordinary salary from the company. He had not put in the requisite years to qualify for the retirement

---

46. Eligibility under the Retirement Plan appears to be conditioned on participation in Socony's Group Life Insurance Plan (App. 33a), a copy of which was not supplied to this court. Even if we were disposed to consider the applicability of § 401(a) in spite of its not having been raised below, which we are not, we would presumably be required to determine whether the Group Life Insurance Plan was violative of § 401(a)'s discrimination standards, a task hardly appropriate for an appellate court without the benefit of expert review by the taxing authorities and consideration at trial by the court below.

We recognize that the Government itself, claiming inadvertence, did not bring the Retirement Plan into the picture until after the suit for refund had been instituted, and, over appellant's objection, appellee was permitted to add the decedent's participation in the Retirement Plan to the stipulation of facts, App. 29a, 30a. At the time of the addition of the Retirement Plan to the stipulation, however, and thereafter, appellant had the opportunity below to raise the § 401(a) issue, which it failed to do.

47. In criminal matters where individual liberties are involved, we have held that deficiencies which appear on the face of a complaint or a warrant, and are raised for the first time on appeal, will be considered as if raised below. United States ex rel. Campbell v. Rundle, 327 F.2d 153, 161 (3d Cir. 1964).

plan.[1] He was not "in fact receiving an annuity or other payment".

Because the decedent in his lifetime was not receiving an annuity or other payment, we must then inquire whether he "possessed the right to receive" the benefits of any plan. Another equally critical time is set forth in the tax regulations for this contingency: "if immediately prior to his death the decedent had an enforceable right to receive payments at some time in the future". Under the survivorship plan he had no right to receive anything in the future, for this plan, by its very terms, was not for his benefit but for someone else, to-wit, a designated beneficiary. Similarly the decedent had no enforceable right to receive the benefits of his retirement plan "immediately before his death," because at that moment he had not qualified under the appropriate years of service to be eligible.

To declare as a matter of law that he had an enforceable right to receive such payments in the future is also to declare as a matter of law that any participant in any retirement program will live long enough to participate in the plan, will be healthy long enough to remain on the job, and will never leave his present employment for another position with another employer. Common sense and experience dictate otherwise.

Accordingly, it cannot be said that the decedent possessed the right to receive the annuity or other payment under the terms of either plan.

In this posture, I believe that one conclusion becomes inescapable: because there was no annuity payable to the decedent at the time of his death under the retirement plan, and because the decedent "immediately before his death" had no enforceable right at some time in the future, under either the retirement or survivorship plans, it is inappropriate to justify taxation on the theory of combining the plans.

The effort of the majority to find support for the Commissioner's action is a masterful endeavor, expressed in comprehensive and scholarly form. This became necessary because of the extreme difficulty of reconciling the language of the statute and the tax regulation with Example 6 of Tax Regulation 20.2039 (1).[2]

This formidable task of reconciliation evinces inordinate concern with the sanctity of descriptive commentary at the expense of clear statutory language. Here indeed is the exemplary tail wagging the statutory dog. Because Example (6) is not complete, it is neither a correct statement of the regulations, nor, without more, a proper reflection of the language of the statute upon which the regulation is based. This example is deceptive, because under certain circumstances— where the terms of the specific combined plans meet the requirements of the statute—its conclusion may be true. But to make a blatant pronouncement that any combination of retirement and annuity plans will subject the value of the annu-

---

1. Government's brief: "As a 20-year employee of Socony, the decedent, if he had reached retirement age under the Retirement Annuity Plan, would have been entitled to receive for the remainder of his life annuities or payments thereunder."

2. "Example (6). The employer made contributions to two different funds set up under two different plans. One plan was to provide the employee, upon his retirement at age 60, with an annuity for life, and the other plan was to provide the employee's designated beneficiary, upon the employee's death, with a similar annuity for life. Each plan was established

at a different time and each plan was administered separately in every respect. Neither plan at any time met the requirements of section 401(a) (relating to qualified plans). The value of the designated beneficiary's annuity is includible in the employee's gross estate. All rights and benefits accruing to an employee and to others by reason of the employment (except rights and benefits accruing under certain plans meeting the requirements of section 401(a) (see § 20.2039–2)) are considered together in determining whether or not section 2039(a) and (b) applies. The scope of section 2039(a) and (b) cannot be limited by indirection."

ity to an inclusion in the employee's gross estate is to be dangerously simplistic. Example (6) overlooks the absolute necessity that either or both of the plans comply with the basic language of the statute. For the Commissioner to rely upon this example affixed as an appendage to a purely interpretative regulation, when the specific terms of the plans involved are not within the ambit of the taxing statute is to impose taxation beyond that authorized by law. It is the language of the statute and the appropriate regulations implementing the statute which must control, not an improvidently-worded example.

With the view I take of this case, it does not become necessary to discuss other serious problems involved, especially the extremely challenging questions of contractual enforceability and third party beneficiaries.

I would reverse the judgment of the district court and enter judgment in favor of the taxpayer.